13   232
f123 575

## BARRON, Adm'r, v. VANDVERT, Adm'r.

1. An administrator *de bonis non*, may sue in his own name, as such administrator, upon a note made payable to his predecessor in the administration.

2. It is the duty of the court to strike out a plea pleaded by its title, on the other party objecting to receive it, but if he demur sto it, he does not thereby admit that the name of a plea is a defence regularly interposed.

3. When a party has the benefit of a defence, under the plea of *non assumpsit*, he cannot complain that a demurrer was improperly sustained to a special plea, setting up the same defence.

4. A payment of part of the sum due upon a note, is not a sufficient consideration for a promise to remit interest due upon the note, or to delay suit.

5. An administrator is not under a moral obligation to perfect the title to land, the consideration of a note held by him in his representative character.

Writ of Error to the Circuit Court of Perry. Before the Hon. J. D. Phelan.

THIS was an action of assumpsit, instituted by Samuel Burnett, who thus describes himself, and deduces his right to sue, viz : " Samuel Burnett, administrator of all and singular the goods and chattels, rights and credits of William J. Bettis, deceased, left unadministered by Francis Bettis and Gabriel J. Handley, who were formerly administrators of the goods and chattels, rights and credits of the said William J. Bettis, deceased, but who resigned their administration without fully administering said estate," complains of James B. Tutt, &c. The declaration then describes as a cause of action, a promissory note made by Tutt, on the 24th September, 1838, by which he promised to pay to Francis Bettis, administrator of William J. Bettis, on or before the 1st day of March, 1841, the sum of six thousand and five hundred dollars, for value received. It is then alledged that Francis Bettis, upon resigning his administration, delivered this note

to Gabriel S. Handley, who was appointed administrator of the unadministered assets of William J. Bettis, deceased; that afterwards Hanley resigned the administration and delivered the note to Burnett, who had been appointed administrator of the unadministered assets of William J. Bettis, deceased. By means whereof, &c.

Pending the suit in the circuit court, both the original parties died, and John Vandvert, administrator, &c. was made the plaintiff, and John Barron, administrator of Tutt, was made a defendant. The defendant demurred to his declaration, and his demurrer was overruled. Thereupon the defendant pleaded—1. Non assumpsit. 2. Payment and set off. 3. *Ne unques administrator.* 4. That Gabriel S. Handley was, on the 21st June, 1841, the administrator of Wm. J. Bettis, deceased, and in possession of the promissory note on which the action is founded, and then agreed with Tutt, the defendant's intestate, that he, Tutt, should not be required to pay any interest, or the balance of principal due thereon; but he, Handley, as administrator, released and fully discharged the intestate from the payment of interest, &c. for a valuable consideration. 5. This plea varies from the preceding, by alledging that Handley agreed with the defendant's intestate, that if he would pay him $1200 on the note declared on, which sum was then and there paid, then he, intestate, should not be required to pay the balance of principal on said note; so that he, Handley, as administrator, realeased and fully discharged the intestate from any balance on the note: *Further,* that the balance remaining unpaid, should stand without interest, until the titles to certain lands were made clear to the defendant's intestate—meaning thereby the lands for which the promissory note was given. It is then alledged, that the titles to these lands have not been made clear or free from incumbrance, or tendered to the defendant, or the intestate in his lifetime. The plaintiff demurred to these pleas, and refused to receive the first three which were pleaded *in short,* as stated above, and his demurrer was sustained. Thereupon an issue was joined on the plea of non-assumpsit, which being submitted to a jury, a verdict was returned for plaintiff, and judgment rendered ac-

30

cordingly. A bill of exceptions, sealed at the instance of the defendant, presents the following points : 1. The plaintiff having produced the note declared on, and rested his case, the defendant then proved and read to the jury an agreement indorsed on the note as follows: " March 1, 1841, Received on the within note twelve hundred dollars ; as to the balance of the within note, it is to stand without interest, until the titles of certain land is made clear to James B. Tutt, for which the within note was given as consideration. G. S. Handley, adm'r,"—and here rested his case. Plaintiff then read to the jury, the transcript of a record from the orphans' court of Wilcox county, which contained a petition filed by James B. Tutt against Francis Bettis, administrator of William J. Bettis, deceased, to compel the administrator to make titles to certain lands, which was sworn to and filed on the 19th August, 1839, at " a regular term of the orphans' court ;" also, a decree rendered by that court, at the " November term," holden on the 18th day of that month, in 1839, requiring Francis Bettis, administrator as aforesaid, to execute to the petitioner a deed conveying in fee simple all the title, both legal and equitable, which was vested in his intestate, at the time of his death, or in his heirs since that time, to the lands described in the petition : *Further*, that Francis Bettis as such administrator, deliver to the petitioner all titles and evidences of title, both legal and equitable, which were in his possession. Plaintiff also read to the jury a deed purporting to be made by Francis Bettis, administrator, &c. in pursuance of the decree above recited, dated the 17th April, 1840. To the introduction of the transcript and deed the defendant objected, because the same was irrelevant evidence, and because the lands therein described were not shown to be the same as those referred to in the agreement indorsed on the note. Plaintiff then proved that Tutt admitted that the land conveyed by the deed, and of which he (Tutt,) " was in possession, was the land for which the note was given ;" the court then overruled the objection and permitted the transcript and deed to be read to the jury.

2. Upon the foregoing testimony the plaintiff prayed the court to charge the jury, that the agreement, or stipulation, indorsed on the note, was without consideration, and void,

and not binding on the estate of Wm. J. Bettis, or the plaintiff; and that notwithstanding the same, the plaintiff was entitled to recover. Which charge was given accordingly.

3. The defendant prayed the court to charge the jury, that the agreement being executed by Handley while he held the note as administrator *de bonis non*, was not void for want of consideration, but was valid and binding on the estate, and that the plaintiff could not recover without showing a compliance on his part with the stipulation therein contained. Which charge the court refused to give.

4. The defendant further prayed the court to charge, that Gabriel S. Handley, as administrator, was authorized to make such an agreement, or stipulation, as that given in evidence, and that it was binding on the plaintiff: *Further*, if they should find for the plaintiff, they were not authorized to calculate interest on the note. This charge was also refused. To the several rulings of the circuit court, the defendant excepted, and here assigns the same as errors.

J. R. JOHN, for the plaintiff in error. Since the passage of the act of 1837, an administrator *de bonis non*, cannot, without an indorsement maintain an action in his own name on a note given to his predecessor; and if he can, it is necessary to alledge in the declaration, that the money when collected, will be assets of the estate. It is not enough that the payee is described in the note as administrator, and the plaintiff in the declaration as his successor. Clay's Dig. 326, § 76; Minor's Rep. 206; 2 Stewt. Rep. 133; 2 Stewt. & P. Rep. 45; 3 Ala. Rep. 150; 6 Ala. Rep. 387; 5 Port. R. 145.

A demurrer is not the proper mode of taking advantage of a plea, which is pleaded *in short*, as it is familiarly called. But if the law be otherwise, the fourth and fifth pleas are good within the act which abolishes special demurrers. 5 Ala. Rep. 451.

Handley, as administrator, was authorized to make the agreement indorsed on the note. Bac. Ab. *Release, E ;* Toller's Ex'rs, 134; 2 G. & Johns. Rep. 86; 1 Wend. R. 583; 1 Atk. Rep. 462; 2 Ves. Jr. Rep. 265; 6 Ala. Rep. 387. It has been held, that either a moral or equitable obligation

is a sufficient consideration to support an express promise. 5 Taunt Rep. 35; 15 Verm. Rep. 716; 2 Caine's Rep. 150; 2 Dev. L. Rep. 517. In the present case there was not only a moral and equitable, but a legal obligation resting on the administrator to make clear titles to the lands for which Tutt had given the note. 8 Ala. Rep. 375.

If the agreement had been made simultaneously with the note, its validity would not be questioned, and as a subsequent defeasance, it may be pleaded in bar of the action unless the condition has been performed. 8 Ala. Rep. 375; Cro. Eliz. 623; 2 Saund. Rep. 144, note 2; 16 Mass. Rep. 24.

The parties to a contract may enlarge the time of performance, waive the conditions, alter them, or after a breach, release the damages. 1 Phil. Ev. 563, 564; 3 Id. C. & H's Notes, 1479 to 1481; 1 Johns. Cas. 22; 1 Cow. Rep. 249; 5 Id. 497; 7 Id. 48; 7 G. & Johns. Rep. 407, 417; 3 Johns. Rep. 520; 14 Ib. 330; 5 Stew. & P. 91; 9 Pick. R. 298; 1 Serg. & R. Rep. 312; 4 Id. 241; 2 Johns. Rep. 186; 7 Mass. 153; 16 Id. 24; 17 Id. 623. The agreement operates as a perpetual agreement not to sue, unless clear titles should be made to Tutt. This, according to the authorities cited, is in legal effect a release. And if the principal is recoverable, certainly the interest is not, until the condition contemplated by the agreement is performed.

Even if the agreement be voluntary and gratuitous, still it must be allowed to operate. 7 Mass. Rep. 265; 16 Id. 24. But it may be inferred that the original agreement was rescinded, and that indorsed on the note substituted as a new one. If so, the consideration is unquestionable. 9 Pick. R. 298.

The proceedings in the orphans' court of Wilcox, and deed consequent thereon, bear date previous to the agreement with Handley, and do not show a compliance with it; consequently they were irrelevant and calculated to mislead the jury. 7 Port. Rep. 437; 1 Ala. Rep. 540.

E. W. PECK, for the defendant in error, made the following points: 1. The action was well brought in the name of the defendant in error as administrator *de bonis non*. King

& Clark v. Griffin, 6 Ala. 387. 2. The declaration sufficiently shows that the recovery would be assets, &c.

3. The indorsement on the note made by the previous administrator, interposed no objection to a recovery. 1. There was no consideration. Doe ex dem. Leverich v. Watts, 6 Ala. 482. 2. If it imposed any objection, it was on the party that made it as an individual, and did not bind the subsequent administrator.

4. The pleas demurred to were clearly bad, and the demurrer was properly sustained. If the memorandum on the note did not of itself, without other proof, show a defence, then the subsequent proceedings, if erroneous, could work no injury to the plaintiff in error, and consequently would be no cause for reversal ; but we insist that the evidence and the charges of the court are free from error.

COLLIER, C. J.—The act of 1837, which has been cited for the plaintiff in error, merely declares that notes, &c. payable to a person or bearer, shall be sued on in the name of the payee, his indorsee or personal representative. It is perfectly clear that it does not interfere with the right of an administrator *de bonis non* to take possession of the unadministered assets of the estate he represents ; and to sue as such upon notes or other evidence of debt payable to his predecessor in the administration. The case of Spence v. Rutledge, 11 Ala. Rep. 490, and the citations there made, show the right of the administrator *de bonis non* to sue in such case, and that the declaration sufficiently alledges the money recoverable on the note, will be assets of the plaintiff's intestate.

It was clearly competent for the circuit court to have stricken out the pleas which were pleaded *by their title* upon the plaintiff's objection to receive them. The plaintiff might (as he did) indicate his objection by demurrer, accompanied by a refusal *ore tenus* to recognize the pleas. By demurring, he waived nothing—certainly did not admit that the name of a plea, is a defence regularly interposed. A demurrer only admits the truth of facts which are well pleaded ; hence it is, that we have repeatedly held, a plea which should be verified by affidavit, is bad on demurrer, if not thus supported.

We need not consider whether the demurrer to the fourth

and fifth pleas were rightfully sustained; for however this may be, the defendant has had the benefit of the defence they set up, under the plea of *non assumpsit*, and this has prevented the judgment on demurrer from working an injury. 8 Ala. Rep. 942.

In Doe ex dem. Leverich & Co. v. Bates, 6 Ala. Rep. 480, we said, "it may be laid down generally, that a mere parol agreement, whether written or unwritten, requires a consideration to support it;" and although it may not be necessary, that the consideration should be expressed in the writing, yet if it is not there expressed, it must be proved by evidence *aliunde.* To sustain this conclusion, many cases are cited. The law may be otherwise, where a contract without a seal is made the foundation of an action. 9 Ala. Rep. 638. In the case first cited, it was decided that where the plaintiff in a judgment receives a partial payment thereon, and agrees to *stay the same for six months,* and no execution issues until the expiration of that period, the agreement will be considered voluntary, and the lien of the judgment override and defeat a conveyance made by the defendant during the time the indulgence was granted. It is said, "if the agreement was voluntary when made, the mere acquiescence of the plaintiffs cannot impart to it a different character in law."

A promise by the creditor to accept of his debtor a less amount than is due, or an agreement upon the payment of a part to forbear a suit for the residue, will not be recognized as binding in law. 2 Bibb's Rep. 27; 12 Johns. Rep. 426; 2 Hall's Rep. 185; 2 Verm. Rep. 536. See also 2 Johns. Cases, 92; 11 Pick. Rep. 150; Wright's Rep. 367. The payment of $1,200 by the defendant's intestate in extinguishment of the note *pro tanto,* furnished no consideration for the stipulation to remit interest, or to delay suit thereon. This is well established by the decision of this court, which we have seen rests upon ample authority.

It has been argued that as the land referred to in the agreement was the consideration of the note, the administrator was under a *moral obligation* to cause the titles to be perfected; he therefore agreed to perform a moral duty, and the law will enforce his undertaking. This argument assumes more than is proved by the writing, even assisted by

all the proof which was made at the trial. If there was no obligation upon the administrator, which the law would enforce, to clear the defendant's title from incumbrance or embarrassment, it is difficult to perceive how moral duty could require him gratuitously to enter into an engagement for that purpose. But be this as it may, the agreement does not disclose a consideration deducible either from legal or moral duty, and we have said that such a writing, unaided by extrinsic proof, cannot be operative. The law has often upheld *express promises* founded on a moral obligation; but to make one liable in such case, it should appear that the obligation is strictly and undoubtedly of such a character. 2 Bing. Rep. 437; 2 B. & Adol. Rep. 811; 13 Johns. Rep. 259. 289; 16 Id. 281, 283, n.; 3 Conn. Rep. 368; 7 Id. 57; 2 Pennsyl. Rep. 521; 1 Verm. Rep. 247; 2 Taunt. Rep. 184. This view relieves us from the necessity of giving to the ruling of the circuit judge a more particular examination. Our conclusion is, that the judgment must be affirmed.