[No. 16874. *En Banc.* November 14, 1921.]

THE STATE OF WASHINGTON, *on the Relation of Chester R. Hovey, Plaintiff*, v. C. W. CLAUSEN, *as State Auditor, Respondent.*[1]

STATES (11)—OFFICERS (43)—SALARY—INCREASE DURING TERM—APPOINTEE FOR UNEXPIRED TERM—STATUTES. Under Const., art. IV, §§ 3, 13, fixing the terms of judges of the supreme court at six years from and after the second Monday in January next succeeding their election, and providing that the salaries of such judges "shall not be increased after their election, nor during the term for which they shall have been elected," on the death of an incumbent who was barred from receiving the statutory increase during the term for which he was elected, a judge appointed to fill his unexpired term comes within the same constitutional inhibition against increase "during the term" for which his predecessor had been elected.

Application filed in the supreme court October 19, 1921, for a writ of mandamus to compel the state auditor to issue a salary warrant to relator. Denied.

*Chadwick, McMicken, Ramsey & Rupp*, for relator.

*The Attorney General* and *Nat U. Brown*, for respondent.

TOLMAN, J.—Relator, by an original proceeding in this court, has made application for a writ of mandamus to be directed to the state auditor. The facts upon which he bases his application and the relief sought are set forth by him in substance as follows:

[1]Reported in 201 Pac. 770.

The late Mr. Justice Mount, having been theretofore duly elected, did, on the second Monday of January, 1919, qualify as a judge of the supreme court of the state of Washington for the full term of six years then beginning, and ending on the second Monday of January, 1925, and immediately entered upon and continually thereafter performed the duties of that office until the third day of September, 1921, when he died. On the 7th day of September, 1921, the Governor duly appointed relator to fill the vacancy caused by the death of Judge Mount, and the relator forthwith qualified, entered upon, and has since continuously discharged, the duties thus devolving upon him.

Relator alleges that, by virtue of the act of March 4, 1919 (ch. 77, Laws of 1919, p. 154), he is entitled to receive a salary at the rate of seven thousand dollars per annum, but that the state auditor has refused, and will continue to refuse, to issue to relator any salary warrant based upon an annual salary greater than six thousand dollars, and the prayer is: "That a peremptory writ of mandamus issue out of this court requiring, commanding and requesting respondent to draw and deliver to relator a warrant in the sum of $466.67, to cover his salary as judge of the supreme court from and including the 7th day of September, 1921, to and including the 30th day of September, 1921."

Respondent's demurrer admits the facts, and the only question presented is, in simple words, is relator entitled to the increased salary provided by the act of 1919, or is he limited to the amount of salary provided by the law at the time Judge Mount was elected and entered upon his last term?

This question has never been squarely presented to or decided by this court, and being a debatable one, the parties involved have sought by this proceeding,

brought in good faith and in a friendly spirit, to have all uncertainty removed.

Counsel for relator has in his brief given an interesting and exhaustive history of the inception and growth of the idea which is embodied in our constitution upon this subject, and it should not be assumed, because we do not recite that history here, that we have not given full consideration to it or weighed the argument that the evils sought to be prevented will not follow directly upon a decision in favor of relator.

A like question has been presented in other states, and the decisions are by no means harmonious. In many, if not most cases, the decision is made to rest upon the peculiar wording of the constitutional provision being considered, though the purpose and intent of all seem to be virtually the same, notwithstanding a difference in the language employed. Tennessee has a constitutional provision which reads:

"The judges of the Supreme Court and inferior courts shall, at stated times, receive a compensation for their services, to be ascertained by law, which shall not be increased or diminished during the time for which they are elected."

The supreme court of that state had occasion to pass upon the question now before us, and in *Gaines v. Horrigan,* 72 Tenn. 608, it was said:

". . . . the language is, that the compensation shall not be increased or diminished during the time for which they are elected. This obviously means during the time and not the term for which the judge is elected."

And accordingly it was there held that the judge appointed to fill out an unexpired term of a deceased judge was entitled to the compensation fixed by law at the time he assumed the duties of the office.

In *Board of Chosen Freeholders v. Lee,* decided by the supreme court of New Jersey and reported in 76 N. J. L. 327, 70 Atl. 925, the constitutional language under consideration was:

"The clerks and surrogates of counties shall be .elected by the people of their respective counties, at the annual election for members of the general assembly, and shall hold their offices for five years."

And the court held that, under this constitutional provision, the term of office might be terminated before the expiration of the statutory period for which the incumbent was elected, by impeachment, resignation, or death of the officer; that the happening of any of these contingencies is an implied limitation upon the right of the elected officer to continue .in office for the period for which he would otherwise hold, and that, when such contingency arises, the officer's term expires, there is a vacancy, and upon the appointment or election to fill the vacant office, the term of another officer begins. A like holding was made by the supreme court of Oklahoma in *Carter v. State ex rel. Taylor,* 77 Okl. 31, 186 Pac. 464.

In *State ex rel. Bashford v. Frear,* 138 Wis. 536, 120 N. W. 216, the supreme court of Wisconsin passed upon the same question and reached the same result, though apparently largely influenced by the fact that the executive officers of the state had uninterruptedly for fifty years or more acted upon the assumption that the appointee to fill a vacancy was entitled to the salary fixed by law at the time of his appointment. In Montana, by a divided court, the same result was reached in *State ex rel. Jackson v. Porter,* 57 Mont. 343, 188 Pac. 375.

Upon the other hand, under the constitutional provision to the effect that the compensation of any county officer shall not be increased "after his election nor

during his term of office,'' the supreme court of California, in *Larew v. Newman,* 81 Cal. 588, 23 Pac. 227, says:

"When Egenhoff took the office, the salary fixed by statute, was $350 per annum. Afterwards, and before he had resigned, the general county government act (approved March 14, 1883) went into effect, by which the salary of said office was fixed at $650 per annum. This act enacted that its provisions for salaries 'shall not affect the present incumbents'; and also that a vacancy in an office should be filled by appointment by the supervisors, 'the appointee to hold office for the unexpired term.' Section 9, Art. 11, of the State Constitution, provides that 'the compensation of any county . . . . officer shall not be increased after his election, or during his term of office'. Section 1004 of the Political Code provides that 'any person elected or appointed to fill a vacancy, after filing his official oath and bond, possesses all the rights and powers, and is subject to all the liabilities, duties and obligations, of the officer whose vacancy he fills.' We think that under these constitutional and statutory provisions, plaintiff merely stood in the shoes of Egenhoff and gained no additional rights. The increased salary did not commence until after the expiration of the term for which Egenhoff had been elected, and that result could not be evaded either by Egenhoff resigning and procuring himself to be appointed, or by his resigning and allowing some other person to be appointed."

The same court applied the same rule in *Storke v. Goux,* 129 Cal. 526, 62 Pac. 68, and in *Harrison v. Colgan,* 148 Cal. 69, 82 Pac. 674, and in the latter case it is said:

"It is a settled rule regarding such restrictions that they forbid any increase during a term, regardless of the fact that different persons may successively hold for successive parts of the term, so that one who is elected or appointed after a part of such term has

expired cannot have an increase made after the term began, though prior to his election or appointment."

The supreme court of Kentucky, in *Bosworth v. Ellison*, 148 Ky. 708, 147 S. W. 400, under a constitutional provision almost identical with our own, said:

"The rule of uniformity in compensation for like service so clearly intended would be destroyed and the amount of compensation be controlled not by the fixed term of office, but by the varying dates, at which persons might be inducted into office. Ellison was appointed to fill out a part of Morgan's unexpired term. He had no term of office apart from the term of Morgan. He was merely occupying the place that Morgan under his election would have filled except for his resignation. A term of office when the period of the term is fixed by Constitution or statute means the period designated by the constitution or statute. There should be a certainty and a fixedness about the words 'his term of office'. They were not intended to depend on the mere accident of appointment or election to fill a vacancy for a month or a year. When a person is appointed or elected to fill a vacancy in a term, he merely fills out the term of his predecessor. He does not enter on a new term of office, as does a person who is elected or appointed and takes the office at the beginning of the term as fixed by law."

So, too, the supreme court of Illinois, in *Foreman v. People*, 209 Ill. 567, 71 N. E. 35, held that a constitutional provision forbidding a change in the compensation of judges during their continuance in office refers to the term and not to the individual, so that one elected after the passage of the act increasing the compensation, to fill an unexpired term of a judge elected before the passage of that act, was not entitled to receive the increased salary. To the same effect are: *Kearney v. Board of State Auditors*, 189 Mich. 666, 155 N. W. 510, and *Baker v. Kirk*, 33 Ind. 517. There are other cases cited by counsel, but as we consider

them persuasive only, we do not find it necessary to discuss them.

In the light of these authorities, let us turn to our own constitution. Section 13, art. IV, provides:

"The judges of the supreme court and the judges of the superior courts shall severally, at stated times, during their continuance in office, receive for their services the salaries prescribed by law therefor, which shall not be increased after their election, nor during the term for which they shall have been elected."

The term of office of judges of the supreme court is likewise fixed by the constitution, section 3, art. IV, provides:

"After the first election the terms of judges elected shall be six years from and after the second Monday in January next succeeding their election."

The language used is so plain and direct that we see little occasion for construction. In section 13, of art. IV, the words "during their continuance in office" refer to the individuals who shall receive the salaries, and the words following, "which shall not be increased after their election nor during the term for which they shall have been elected", in the light of the specific fixing of a six-year term, must be held to refer to that term, whether filled in its entirety by the first incumbent or successively after his demise, resignation or impeachment by others appointed or elected to fill out his unexpired term. In other words, the constitution first carves out a definite and fixed six-year term, and then, in the later section, refers to that term as an entirety and forbids an increase of salary during its existence, without regard to the individual who may occupy it at any particular time.

Like the supreme court of Wisconsin, we think some weight must be given to the construction placed upon

the constitution by other departments of the state government, and it appears that the Attorney General as early as 1909 placed a like construction upon § 8, art. XI, which refers to the compensation of county officers in somewhat similar terms, and this construction has been followed since that time. Opinions of the Attorney General, 1909-10, page 8. Moreover, the construction which we now place upon these provisions of the constitution is in harmony with the spirit and purpose of the construction heretofore placed by us on other provisions of the constitution. *State ex rel. Davis v. Clausen,* 47 Wash. 372, 91 Pac. 1089; *State ex rel. Funke v. Board of Commissioners of Pierce County,* 48 Wash. 461, 93 Pac. 920; *State ex rel. Reynolds v. Howell,* 70 Wash. 467, 126 Pac. 954, 41 L. R. A. (N. S.) 1119; *State ex rel. Younger v. Clausen,* 111 Wash. 241, 190 Pac. 324; *State ex rel. Bagley v. Clausen,* 111 Wash. 254, 190 Pac. 329.

Had we the time and space we might analyze these cases and point out the reasoning therein applicable to the present question and the similarity of the principles involved, but deeming the language of the constitution plain and the authorities already cited abundant, we desist.

The writ will be denied.

PARKER, C. J., HOLCOMB, FULLERTON, MAIN, BRIDGES, and MITCHELL, JJ., concur.