177 So. 743

HAMILTON, Tax Collector, v. EDMUNDSON.

6 Div. 235.

Supreme Court of Alabama.

Dec. 16, 1937.

Ernest Matthews, of BirmingHam, for appellant.

Kenneth Perrine, of Birmingham, for appellee.

**THOMAS, Justice.**

The assignments of error challenge the rendition of judgment for petitioner in awarding the writ of mandamus.

This suit arose in the circuit court on a petition for writ of mandamus, duly sworn to, reciting that Lacey Edmundson, the petitioner, on the 23d day of April, 1931, was appointed, qualified, and commissioned as deputy tax assessor, and as such he held office continuously until the 17th day of January, 1935; that under said appointment it was his duty to cause to be listed for taxation property which had escaped assessment and the tax had not been paid thereon; that during his incumbency of said office he made two escape assessments against certain per-

sonal property owned by the American Cast Iron Pipe Company, which assessments were made final on an appeal to the circuit court for Jefferson county. A judgment was rendered in that cause fixing the taxable value of the property so assessed by the petitioner at the sum of $57,500. It is alleged that the legal fee for the service of the petitioner in making said assessments was an amount equal to 20 per cent. of the total tax paid which amounted to the sum of $11,500. That petitioner had received the sum of $7,500 of the amount of $11,500 due to him as such officer, and there remains a balance due to him in the sum of $4,000.

The petitioner further alleged that it was the official duty of the defendant, as the tax collector of Jefferson county, to pay to the petitioner the sum of $4,000, and that he made due demands on the defendant officer for the payment of said sum, and he declined to make said payment, although at the time of said demands the defendant officer had on hand funds derived from the payment to that defendant of said tax more than a sufficient sum to pay petitioner's said lawful claim. The petition prayed that a peremptory writ of mandamus issue to the defendant requiring him to pay to the petitioner the said sum of $4,000.

The defendant official filed an answer to the petition admitting the allegations therein contained; but set up the fact that the petitioner had agreed to accept the sum of $7,500 for his said service for making said assessment and had been paid said sum of $7,500 and executed a release for all fees and compensation due him as such deputy tax assessor, and that the petition for the writ of mandamus should be denied.

The cause was submitted for final judgment on the petition, answer and exhibit. The court rendered a judgment awarding a peremptory writ of mandamus requiring the defendant to pay to the petitioner the said sum of $4,000. From this judgment the defendant appeals.

It is insisted by the respondent that, by reason of the acceptance of the stipulated sum for services the contract was executed and the liability was extinguished. In support of this contention counsel cite two decisions of this court, viz., Bradley v. Graves, 46 Ala. 277, where the payment vel non of a note to decedent was before the court, and the court said: "Whether the note belonged to the plain-

tiff, B. Graves, individually, or as guardian, the payment was properly made to him, and the payment was an extinguishment of the debt, although it continued to remain in his hands. Payment made to an intermediate holder of a note, indorsed in blank, whose name does not appear on the note, such holder being, really, the owner at the time, is a good payment. Richardson v. Farnsworth, 1 Stew. 55"; and Hemphill v. Moody, 64 Ala. 468, 475, where it was held that money paid under a mistake of law cannot be recovered by action, either at law or in equity; but, when money is paid to a person to whom it properly belongs, though under a mistake as to the right in which it accrues to him, the debt is extinguished, "and he can not again enforce payment of his claim in his lawful right." Mr. Justice Stone rested that decision on this observation: "Guided, as we have said, by the averments of the bill, Moody, the complainant, was liable to pay—was indebted—to Jerusha Ready's estate, to be distributed and paid to her next of kin, eleven or twelve hundred dollars; no more. He has paid, and they *have received a larger sum than that, to which they had no other rightful claim.* They can not demand a second payment, on the technical ground that, when the payment was made, it was erroneously supposed to be due on another account. Payment discharges a debt, no matter when, or by whom made."

It is thus noted that the foregoing decisions are not applicable to the instant pleading and facts; no question of an official's lawful compensation was involved.

█ The rule that prevails and to be here applied is that the acceptance of less compensation than that established by law for an official service does not estop that official from subsequently recovering the just and due legal compensation. Any other rule would be void on the grounds of public policy. Stewart v. Sample, 168 Ala. 270, 53 So. 182. The general authorities are collected in 46 Corpus Juris 1027. See, also, Pitsch v. Continental and Commercial Nat. Bank, 305 Ill. 265, 137 N.E. 198, 25 A.L.R. 164, and 22 R.C.L. 538.

The deputy tax assessor of Jefferson county is a public officer. General Acts of Alabama 1931, p. 295, Scruggs v. State, 111 Ala. 60, 20 So. 642, and Montgomery v. State, 107 Ala. 372, 18 So. 157. His compensation was fixed by the General Acts of 1923, p. 293, § 25-A.

█ It results from the general decisions and those in this jurisdiction that, when a public official has performed an official service and the amount of his compensation has accrued, a release executed by that official for a sum substantially less than the amount that has accrued to him and was due him under the law is without sufficient or valuable consideration and void. 53 C.J. 1200, and Alabama authorities under note 74; Maness v. Henry, 96 Ala. 454, 11 So. 410; Western Ry. v. Foshee, 183 Ala. 182, 62 So. 500; McCarty-Greene Motor Co. v. House, 216 Ala. 666, 114 So. 60; Abercrombie v. Goode, 187 Ala. 310, 65 So. 816; Cotton States Life Ins. Co. v. Crozier, 218 Ala. 173, 118 So. 327; Penney v. Burns, 226 Ala. 273, 146 So. 611; 83 A.L.R. 960, and 55 A.L.R. 184.

In Williston on Contracts, § 1730, p. 3025, the pertinent observation is made as to the appointment, payment, and discharge of compensation of an official, that: "As it is the duty of a public official charged with making appointments to make the best appointments possible without reference to private interests, and as it is expedient that those occupying public office shall have such inducements as its emoluments afford for the faithful performance of their duties, a contract to make a certain appointment or to influence the making of an appointment by such an official, or for an official to share the emoluments of his office with another, is invalid. For the same reason, a contract of one who holds a public office or of one who is a candidate for such an office, the emoluments of which are fixed by law, *to take less than legal compensation is invalid.* If the agreement is executed by the payment of the diminished emoluments, there are decisions, holding that no further claim can be made. *But the opposite view, also supported by authority, seems better.* Ohio Nat. Bank v. Hopkins, 8 App.D.C. 146; School City v. Hickman, 47 Ind.App. 500, 94 N.E. 828; Pitt v. Board of Education, 216 N.Y. 304, 110 N.E. 612." (Italics supplied.)

The first observation is supported by well-considered authorities and illustrated by the following decisions:

"A deputy sheriff, duly appointed and entitled by statute to receive from the sheriff a certain compensation, may recover the full statutory amount notwithstanding an illegal agreement with the sheriff to serve for a less sum. In such case the

rule that a party to an illegal contract cannot enforce any right under it is not applicable, because the claim is under the statute and not under the illegal contract." Bodenhofer v. Hogan, 142 Iowa 321, 120 N.W. 659, 134 Am.St.Rep. 418, 19 Ann. Cas. 1073, 1075.

"A contract whereby a justice of the peace agrees to charge smaller fees in suits to be brought before him by a certain corporation than prescribed by statute, and that such fees shall not be collected unless they have been paid over by the defendants to the corporation, is contrary to public policy and void." Hawkeye Ins. Co. v. Brainard, 72 Iowa 130, 33 N.W. 603.

"In the case of People ex rel. Satterlee v. Board of Police, 75 N.Y. 38, 39, 42, the question was whether the compensation of a police surgeon was that fixed by statute, or that named in a resolution of a Board of Police under which he was appointed. He accepted the appointment and performed the duties of the office for more than two years, drawing only the salary fixed by the resolution, and which was less than that fixed by statute. The court of appeals of New York, speaking by Judge Miller,—all the members of the court who voted in the case concurred,—said: 'As the statute gave the salary, I think fixing the amount at a less rate by resolution could not make it less than the statute declared. There is no principle upon which an individual appointed or elected to an official position can be compelled to take less than the salary fixed by law'."

A decision of the Supreme Court of the United States in the case of Glavey v. United States, 182 U.S. 595, 21 S.Ct. 891, 896, 45 L.Ed. 1247, 1253, reviewed the decisions from many leading courts, and Mr. Justice Harlan concludes as follows: "It was not competent for the Secretary of the Treasury, having the power of appointment, to defeat that purpose by what was, in effect, a bargain or agreement between him and his appointee that the latter should not demand the compensation fixed by statute. Judge Lacombe, speaking for the Circuit Court of the United States for the Southern District of New York in Miller v. United States, 103 F. 413, 415, well said: 'Any bargain whereby, in advance of his appointment to an office with a salary fixed by legislative authority, the appointee attempts to agree with the individual making the appoint-

ment that he will waive all salary or accept something less than the statutory sum, is contrary to public policy, and should not be tolerated by the courts. It is to be assumed that Congress fixes the salary with due regard to the work to be performed, and the grade of man that such salary may secure. It would lead to the grossest abuses if a candidate and the executive officer who selects him may combine together so as entirely to exclude from consideration the whole class of men who are willing to take the office on the salary Congress has fixed, but will not come for less. And, if public policy prohibits such a bargain in advance, it would seem that a court should be astute not to give effect to such illegal contract by indirection, as by spelling out a waiver or estoppel.' If it were held otherwise, the result would be that the heads of executive departments could provide, in respect of all offices with fixed salaries attached and which they could fill by appointments, that the incumbents should not have the compensation established by Congress, but should perform the service connected with their respective positions for such compensation as the head of a department, under all the circumstances, deemed to be fair and adequate. In this way the subject of salaries for public officers would be under the control of the executive department of the government. Public policy forbids the recognition of any such power as belonging to the head of an executive department. The distribution of officers upon such a basis suggests evils in the administration of public affairs which it cannot be supposed Congress intended to produce by its legislation. Congress may control the whole subject of salaries for public officers; and when it declared that for the purpose of carrying into effect the provisions of the act of 1882 the Secretary of the Treasury 'shall appoint officers to be designated as special inspectors of foreign steam vessels, at a salary of two thousand dollars per annum each,' it was not for the Secretary to make the required appointments under a stipulation with the appointee that he would take any less salary than that prescribed by Congress. The stipulation that Glavey, who was local inspector, should exercise the functions of his office of special inspector of foreign steam vessels 'without additional compensation' was invalid under the statute prescribing the salary he should receive, was against public

policy, and imposed no legal obligation upon him. And the mere failure of the appointee to demand his salary as such officer until after he had ceased to be local inspector, was not in law a waiver of his right to the compensation fixed by the statute."

It will be further noted that it is held that "a city treasurer cannot, by contract with the city, alter the compensation fixed by ordinance for the collection and disbursement of city funds, but is entitled * * * to the compensation prescribed." Purdy. v. City of Independence, 75 Iowa 356, 39 N.W. 641. A contract between an appointive officer of a city for a less sum than that prescribed in an ordinance is against public policy. Peters v. Davenport, 104 Iowa 625, 74 N.W. 6. The salary of a city engineer fixed by the council cannot be discharged by presentation of a bill for a less sum, and the payment of any sum less than the salary fixed "did not constitute an accord and satisfaction which would prevent a recovery of the balance of the compensation fixed by the council." Rettinghouse v. City of Ashland, 106 Wis. 595, 82 N.W. 555.

Adverting to decisions by this court, Mr. Justice Brickell declared of an agreement to reduce commissions of the chief deputy of the tax assessor, in Robertson v. Robinson, 65 Ala. 610, 615, 39 Am.Rep. 17:

"The proposition was accepted, and it is this agreement the subsequent writing was intended to embody, and which the parties treated as embodying.

"Of such an agreement, in the strong language of Chief-Justice Wilmot, in Collins v. Blantern, 2 Wils. 341 (1 Smith's Lead.Cas.Pt. 2, 673), it may be said, that it 'is void ab initio, by the common law, by the civil law, moral law, and all laws whatever.' It concerns a place of public trust, in which the public have high interests, involving the performance of public duties, and which can not be made the subject of traffic, and can not become the matter of trade and bargaining."

We come to the consideration of the legal effect of the release executed by petitioner, exhibited in support of the answer and taken as a part thereof. Grimsley v. First Avenue Coal & Lumber Co., 217 Ala. 159, 115 So. 90. A release is a contract and must be supported by a lawful and valuable consideration; and, if not supported by a lawful consideration, is nudum pactum. Brown v. Lowndes County, 201 Ala. 437, 78 So. 815, 817. If the amount of the petitioner's fee or compensation was in dispute, as a matter of compromise, the parties could settle their dispute by agreement on an amount to be paid and the payment of the money and execution of a release would foreclose further controversy. Such, however, are not the facts in the case at bar. Here, we are confronted with an amount of money due to the petitioner as an official, earned in the discharge of his official duties which were fixed, definite, and certain.

It was the amount of tax due and collected from the delinquent taxpayer; was a certain fixed and definite sum of money due as taxes and fixed by law. The amount of the plaintiff's compensation as an official was an amount equal to 20 per cent. of the tax which was likewise a fixed, definite, and certain sum of money earned. When the petitioner executed a release of a $11,500 debt *which had already accrued and the amount of which was not in dispute,* for the sum of $7,500, he executed a document that had no legal efficacy. In Brown v. Lowndes County, 201 Ala. 437, 78 So. 815, the authorities are collected as touching the statutes that in an extent abrogate the rule of the common law as to receipts, releases, and discharges in writing and the composition of debts under Code 1907, §§ 3973, 3974. The decision in the case of Hand Lumber Co. v. Hall, 147 Ala. 561, 563, 564, 41 So. 78, 79, is quoted from in the Brown v. Lowndes County Case, supra, as follows: " ' "The rule that the payment of a less sum than the real debt will be no satisfaction of a larger sum without a release by deed applies only to conceded or undisputed demands. Where the claims are in dispute, the compromise and part payment thereof are sufficient consideration to support the discharge." 24 Am. & Eng.Ency. Law (2d Ed.) p. 288. The cases of Barron v. Vandvert, 13 Ala. 232, Pearson v. Thomason, 15 Ala. 700, 50 Am.Dec. 159, and Hodges v. Tennessee Implement Co., 123 Ala. [572] 573, 26 So. 490, each involved an indebtedness by note, and in those cases there was no dispute as to the existence of the indebtedness as evidenced by the written obligations. In each of them the holding was that on part payment of the debt, *without surrender of the note* [italics supplied], the agreement by the creditor to accept in discharge of the debt a less sum in money than the debtor owed was a nude pact, constituting no bar to a recovery of the

balance.' Brackin v. Owens Horse & Mule Co., 195 Ala. 579, 581, 71 So. 97, 98."

This ruling has been followed in Bryan v. Spivey, 223 Ala. 298, 299, 135 So. 443, 444, where the court said:

"In earlier cases, it appears to have been held that the statute intends that on part payment of the debt evidenced by an agreement in writing, without a surrender of the writing—in this case promissory notes—the agreement by the creditor to accept in discharge of the debt a less sum in money than the debtor owed is a nude pact and constitutes no bar to a recovery of the balance. Hand Lumber Co. v. Hall, 147 Ala. 561, 41 So. 78; Singleton v. Thomas, 73 Ala. 205; Brackin v. Owens Horse Co., 195 Ala. 579, 71 So. 97; Brown v. Lowndes County, 201 Ala. 437, 78 So. 815; Ex parte Southern Cotton Oil Co., 207 Ala. 704, 93 So. 662.

"The case in hand is not affected by section 7670 of the Code, which gives effect to settlements in writing for the composition of debts, meaning claims unliquidated or in dispute. Hand Lumber Co. v. Hall, 147 Ala. 561, 41 So. 78."

The contracts dealt with in the case of Bryan v. Spivey, supra, were notes for the purchase price of land, and the party gave new notes in novation of the old ones.

See, also, Penney v. Burns, 226 Ala. 273, 274, 146 So. 611, 612, wherein it is declared: "That consideration exists when 'something substantial which one party is not bound by law to do has been done by him, or that something he has the right to do he abstains from doing at the request of the other party.' 1 Corpus Juris 544, § 47, note 12, or when there is a compromise and settlement of a disputed or unliquidated claim." In this case petitioner's claim was liquidated and was not in dispute, and was fixed by the statute. General Acts of Alabama, 1923, p. 293, § 25-A.

It is inescapable that the release given by the official and pleaded by the respondent is insufficient in law to constitute a defense in this case and to prevent payment of the amount earned as an official and due that official.

It follows that the trial court was not in error in rendering judgment for petitioner and in awarding petitioner the writ of mandamus.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.