OPINION.
This is an action which involves the questions as to whether or not a county treasurer who was appointed to fill a vacancy is entitled, under our Constitution, to an increased salary provided by the legislature previously and, if so, whether or not he is estopped from claiming such increase by reason of an agreement to receive the lower salary or by reason of his constant acceptance of the latter.
The plaintiff herein was S.A. Ballangee. It appears herein, and it was alleged in the petition, that Fremont County of this State was at the times here mentioned, a county of the second class; that on August 1, 1945, the office of county treasurer of that county became vacant by reason of the resignation of the incumbent and that plaintiff was duly appointed to fill the vacancy for the remainder of the term; that plaintiff accepted the office on August 1, 1945, properly qualified, and held it until the end of the term, which was on the 1st day of January, 1947; that during that time the county paid him a salary at the rate of $2000 per annum; that the legal salary during that time was at the rate of $2500; that there is due him the sum of $708.34 for which plaintiff asked judgment.
It further appears that prior to February 28, 1945, the county treasurer of Fremont County was, under the law then in effect, entitled to a salary of $2000 per year. By Chapter 166 of the Session Laws of 1945, approved on February 28, 1945, the salary of such officer in Fremont County was raised to the sum of $2500 per annum.
The Board of County Commissioners of Fremont County answered the petition filed in the case alleging that the plaintiff agreed to accept the appointment to *Page 396 
fill the vacancy above mentioned at a compensation of $2000 per annum; that for each of the months commencing with the month of August, 1945, and through December, 1946, he filed a verified claim with the defendant stating that the defendant was indebted to him in the sum of $166.66 per month which was at the rate of $2000 per annum and that by reason of filing such claims, he is estopped from claiming any additional amount and that such action resulted in an accord and satisfaction. Defendant pleaded further that the plaintiff should be estopped from claiming any additional amount for the reason that in 1945 he sent an estimate of the expenses of his office for the coming year to the budget officer of Fremont County, which was based on his salary for the year 1946 at the rate of $2000 per annum. Defendant further alleged that plaintiff is not entitled to any additional amount by reason of the constitutional provisions hereinafter mentioned. A demurrer was filed to the affirmative defenses of the defendant. That demurrer was sustained and defendant thereafter refused to plead further and judgment for plaintiff was entered for the amount claimed.
Since this case has been pending in this court, the plaintiff Ballangee has died, and upon motion the executrix of his estate has been substituted as the plaintiff and respondent herein. But reference to plaintiff herein will refer to Ballangee, plaintiff below.
I. CONSTITUTIONALITY OF INCREASED SALARY.
The County of Fremont claims that the plaintiff cannot claim a greater compensation than at the rate of $2000 per annum by reason of Section 32, Article 3, of the Constitution of this state which so far as applicable herein, is as follows: "Except as otherwise *Page 397 
provided in this constitution, no law shall extend the term of any public officer or increase or diminish his salary or emolument after his election or appointment." An annotation on the subject is contained in 166 A.L.R. 842. In the case of State ex rel. Jackson vs. Porter, 57 Mont. 343, 188 P. 375, the inquiry before the court was as to whether or not a district judge appointed to fill a vacancy was entitled to the increase salary previously granted by an act of the legislature. The court there considered a constitutional provision exactly like Section 32, Article 3, of our Constitution and also considered another constitutional provision, reading: "The justices of the Supreme Court and the judges of the district courts shall each be paid quarterly by the state, a salary, which shall not be increased or diminished during the terms for which they shall have been respectively elected." That constitutional provision is very similar to Section 17, Article 5, of our own Constitution which reads: "The judges of the supreme and district courts shall receive such compensation for their services as may be prescribed by law, which compensation shall not be increased or diminished during the term for which a judge shall have been elected, and the salary of a judge of the supreme or district court shall be as may be prescribed by law." The Supreme Court of Montana in the foregoing case considered the purpose and meaning of these constitutional provisions to be the same and that such purpose did not in any way hinder the payment of the increased salary to the appointee. The court cited in support of its opinion, the cases of Gaines vs. Horrigan, 72 Tenn. (4 Lea) 608, State ex rel. Bashford vs. Frear, 138 Wis. 536, 120 N.W. 216, 16 Ann. Cas. 1019, Board of Chosen Freeholders of Atlantic County vs. Lee,76 N.J.L. 327, 70 A. 925, Carter, State Auditor vs. State ex rel. Taylor, 77 Okla. 31, 186 P. 464. We have examined these cases and find them in point. In the subsequent case *Page 398 
of Adami vs. Lewis and Clark County, 114 Mont. 557,138 P.2d 969, the court had under consideration the constitutional provisions similar to Section 32, Article 3, of our Constitution and came to the same conclusion at which it had arrived in the case of State ex rel. Jackson vs. Porter. In the case of Lancaster vs. Board of Commissioners of Jefferson County, 115 Col. 261, 171 P.2d 987, 166 A.L.R. 839, the court had under consideration the constitutional provision insofar as pertinent here, exactly like Section 32, Article 3, of our Constitution. In that case too, a county treasurer had resigned and the plaintiff in the case had been appointed to fill the vacancy and the question was as to whether or not he was entitled to an increased salary previously granted by the legislature. The court said: "In construing similar constitutional prohibitions, it is considered in some jurisdictions that the term belongs to the office and not to the officer; that the appointee to fill a vacancy does not take a new term, but part of that enjoyed by his predecessor, and that the salary is an incident of the term which continues for its statutory period regardless of its incumbents. State ex rel. Hovey vs. Clausen, 117 Wn. 475, 201 P. 770. In other jurisdictions, it is held that the constitutional restriction relates to the officer, not to the office. Often the particular wording of the constitutional provision is invoked as determinative of the rule to be followed. 43 Am. Jurisprudence 144, Section 351. Applying that test here, our prohibition refers to any public officer, not office, and to his salary and to his election or appointment. Such wording suggests reference to the individual officer rather than the statutory term. Much more persuasive to us are the reasons recognized as prompting such inhibitions. Those reasons are: To remove temptation from the legislature to influence a public officer by threat or promise of salary change and to remove temptation from the officer to seek for himself *Page 399 
increased compensation. Neither of these reasons applies to an officer subsequently appointed to a vacancy more than to an officer subsequently elected to a new term. Where its intended extent is uncertain, the limit of the purpose should mark the limit of the rule. Accordingly, we are persuaded that the constitutional limitation should not apply to one subsequently appointed to fill a vacancy. Among other cases so holding are: State ex rel. Jackson vs. Porter, 57 Mont. 343, 188 P. 375; Carter vs. State ex rel. Taylor, 77 Okla. 31, 186 P. 464; Gaines vs. Horrigan, 72 Tenn. 608; State ex rel. Bashford vs. Frear,138 Wis. 536, 120 N.W. 216, 16 Ann. Cas. 1019." Identical in effect is McKinney vs. Northumberland Co., 75 Pa. Super. 581, and see State ex rel. Thomas vs. Gunter, 170 Ala. 165, 54 So. 283. We agree with these holdings.
We might add the following: At the regular session of the legislature in 1909, the salary of the state examiner was increased from $2000 to $3000. At that time, H.B. Henderson was the incumbent. He resigned in June, 1909, and Mr. Newlin was appointed in his place. W.E. Mullen, the Attorney General, rendered an official opinion on June 23, 1909, (see published report of attorney general, 1909-1910, page 42) that Mr. Newlin was entitled to the increased salary. We need not examine the particular reasoning of that opinion too closely. Moreover, the administrative officers of the state have, since at least the year 1921, construed Section 17, Article 5, of our Constitution relating to the salary of justices and judges of this state, as requiring that when one of the justices or judges died or resigned and the legislature has in the meantime increased the salary of the office, the appointee to fill the vacancy is entitled to the increase of the salary granted by the legislature. The purpose of the foregoing constitutional provision is the same as that in controversy here (State ex rel. Jackson vs. *Page 400 
Porter, supra) and the same rule should govern in both cases.
Counsel for the appellant rely upon Section 27-113, Wyo. Comp. St. 1945, as it read in the revised statutes of 1931. It then read as follows: "Every person appointed to fill any vacant office, as required by law, shall, before entering upon the duties of his office, qualify and give bond in the same manner as though he had been duly elected to the same office, and shall inall things be subject to the provisions of law relating to suchoffice." The italicized portion did not appear in the original enactment in 1876, nor is it in the section as it appears in the Compiled Statutes of 1945, and instead of the italicized portion read and reads as follows: "and shall in all things be subject to the provisions of this act." The original enactment in 1876 appears in an enactment relating exclusively to the giving of a bond by an official (now Sections 27-109 to 27-114). It could accordingly have no bearing whatever upon the question now before us. We do not think that the revisers of the Statute of 1931 intended to change the meaning of the statute. Furthermore, there is nothing in the italicized portion which bears the meaning attributed to it by counsel for the appellant. The law in force when the plaintiff, Ballangee, was appointed was that he was entitled, under Chapter 166 of the Session Laws of 1945, to an annual salary of $2500. The act did not apply "to any countyofficers now holding office." (To-wit February 28, 1945). The plaintiff, Ballangee, was not holding office on February 28, 1945, and consequently did not come within the exceptions noted in that chapter. Counsel for appellant thinks that the foregoing statutory provision is like that mentioned in Larew vs. Newman,81 Cal. 588, 23 P. 227, which reads as follows: "`Any person elected or appointed to fill a vacancy, after filing his official oath and bond, possesses all the rights and powers, and is *Page 401 
subject to all the liabilities, duties, and obligations, of the officer whose vacancy he fills.'" It is quite apparent that the two statutes are entirely different. Under the California statute, the person appointed to fill a vacancy had all the rights of the person whose vacancy he filled. These rights necessarily included the salary incident to the office and constituted a limitation upon the amount of salary which the person filling the office would be able to obtain. No such limitation is contained in any statute of this state.
II. ESTOPPEL, AND ACCORD AND SATISFACTION, ETC.
Counsel for appellant claims that Section 27-812, Wyo. Comp. St. 1945, contains a statutory accord and satisfaction when warrants for payments are accepted. That section, in general, provides for auditing and allowance of claims against the county. It provides for two kinds of warrants to be issued, one kind being when at the time of drawing and issuing the same, there shall be sufficient moneys in the appropriate fund in the treasury to pay such warrants. It provides for another kind of warrant, ordinarily called certificates of indebtedness, in case there are no moneys in the county treasury of a county to meet and defray the necessary expenses. In that event, warrants shall be issued in anticipation of collection of taxes to the extent of 80% of the respective funds against which such warrants are drawn, the warrants to show upon the face that they are payable solely from the fund on which they are drawn. It then further provides that the person or persons to whom such last named warrants and orders shall be allowed and delivered shall be held to have accepted the same, in full payment and satisfaction of the claim to pay which the same was issued. The intent of the statute evidently is that when warrants or certificates of indebtedness are issued *Page 402 
against such limited fund and the fund is exhausted, no further claim against the general credit of the county shall exist on the part of those who have accepted such warrants. There is no claim in this case that the statute is applicable in this case, or that the warrants issued to the plaintiff, Ballangee, were issued against a limited fund as herein above indicated. It follows, of course, that we must solve the question here raised upon common law principles without the aid of any statute.
As heretofore stated, the county pleaded that plaintiff, Ballangee, accepted his appointment at a compensation of $2000 per annum. The specific manner of that acceptance does not appear. Construing the pleading liberally, we shall regard it as alleging that he agreed with the Board of Commissioners of Fremont County to accept the office for that compensation, which was less, as already stated, than that fixed by law. The county further pleaded estoppel, and accord and satisfaction by reason of plaintiff filing his verified claim each month at the reduced salary, and because he certified to the budget officer that his salary would be at the rate of $2000 per annum. Before considering these situations in combination, we shall first consider them separately. Annotations of the law herein involved are found in 70 A.L.R. 972, 118 A.L.R. 1458, 160 A.L.R. 490.
(1) VALIDITY OF AGREEMENT.
The right of an officer to receive his compensation does not rest upon contract and the principles of law governing contractual relations and obligations. The salary is incident to the office. 46 C.J. 1014. It is fixed by the legislature, and the Board of County Commissioners has no power to reduce it. It is accordingly held by nearly all of the courts that: "a bargain of one who holds a public office or of one who is a candidate for *Page 403 
such an office, the emoluments of which are fixed by law, to take less than legal compensation is invalid." 6 Williston on Contracts, Revised Edition, Section 1730. "The reasons for the rule are obvious. Where the compensation for an office has been fixed by law, it would be detrimental to the public service if the office could be let out to the lowest bidder. Laws designed to attract competent persons to the public office by providing them with adequate compensation could be set at naught at the caprice of those charged with their administration. The effects on the efficiency and morale of the public service, if this were permitted, are not difficult to imagine." Allen vs. City of Lawrence, 318 Mass. 210, 61 N.E.2d 133, 160 A.L.R. 486. As more fully stated in Crutcher vs. Johnson County (Tex.Civ.App.),79 S.W.2d 932: "It is to be presumed that the Legislature, in fixing the salary to be paid to those who filled the various public offices of this state, did so with due regard to the nature of the service and the character of the individual needed to fill the office, and the type of officer that could be obtained for the salary offered. If a candidate for public office is permitted to obtain appointment or election by a promise to serve for less than the amount fixed by the Legislature, or if, after having obtained appointment or election, he is permitted to more securely entrench himself in office by such a promise and thus bring about his reappointment or re-election, such practice will ultimately result in the virtual auctioning off of official positions to the lowest bidder, and the obtaining of the least efficient employees to fill the positions. Those capable of earning the salary fixed by the statute, and of the type contemplated by the Legislature, will be eliminated by such competitive bidding, so that none but the inefficient will be available for selection to fill the offices. Official morality and public policy alike prohibit the undermining of the public service by permitting officers *Page 404 
to thus make merchandise of their official services. Such promises by public officials have been condemned as contrary to public policy, not only by the Supreme Court of this state, but by the federal courts, and the Courts of Appeals of almost every other state in the Union."
The Supreme Court of Missouri in State ex rel. vs. Darby,345 Mo. 1002, 137 S.W.2d 532, after quoting the foregoing adds: "An even more vital ground is, that public office, and compensation therefor, is not and must not become a matter of contract. Mechem on Public Officers, sec. 463 and 855. Public offices and positions belong to the people and not to officers upon whom they confer appointive power. 22 R.C.L. 377-379, secs. 9-11. The qualifications, tenure, and compensation thereof must be determined by the people or the people will lose control of their government. This must be done by the representatives the people have authorized to act for them, unless the people themselves have determined these matters by writing them into the Constitution."
(2) ESTOPPEL — ACCORD AND SATISFACTION.
It is claimed that plaintiff, Ballangee, filed a monthly verified claim for a salary less than that provided by law and that, hence, he is estopped from claiming any more. Section 27-303, Wyo. Comp. St. 1945, provides: "The salaries of county and precinct officers as provided for by law shall be paid in equal monthly installments, by the county in which they serve, and shall be allowed at the first regular monthly meeting of the board of county commissioners occurring after the rendition of such service." The statute is mandatory, and it is at least doubtful that it was necessary for Ballangee to file a claim each month. 20 C.J.S. *Page 405 
1254. But whether it was or not, no estoppel, we think, arose by reason thereof. In State ex rel. vs. Hamilton, 303 Mo. 302,260 S.W. 466, it is stated in the syllabus as follows: "That a circuit clerk * * * put in monthly bills for salary at a lesser rate than fixed by law, would not estop him from claiming additional amounts to which he was entitled; his conduct and acts not having caused the county to act to its detriment, in view of its legal obligation to pay the statutory salary." To the same effect are Bell vs. Town of Mabton, 165 Wn. 396, 5 P.2d 514, City of Winchester vs. Azbill, 225 Ky. 389, 9 S.W.2d 51.
There was no consideration for claiming or accepting the lesser salary and no accord and satisfaction could result therefrom. 1 C.J.S. 473, Hamilton vs. Edmundson, 235 Ala. 97, 177 So. 743, Phillips vs. County of Graham, 17 Ariz. 208, 149 P. 755.
The author of the Annotation in 160 A.L.R. at page 491, remarks that some of the courts, in holding agreements like that at bar invalid, have regarded it as a necessary corollary to hold that acceptance of less than the legal salary is ineffective and that they disregard waiver, estoppel or donation. The reason is evidently this: It would do little good to condemn a contract such as in question here, but condone what is done pursuant thereto. To make the condemnation effective, it must reach the consequences of the contract. In fact, the naked contract, standing by itself, would be comparatively harmless. The evil or the major portion thereof lies in what is done pursuant thereto. We shall again refer to this later, when discussing executed illegal agreements. If what has been said is correct, as it seems to be, then we may logically draw another conclusion: The conduct of an official receiving a salary less than that provided by law in the absence of an express contract, would be similar to, and at times, *Page 406 
identical with, the conduct of an official who receives a lesser salary than provided by law pursuant to an express contract. That conduct would consist, for instance, of filing a claim each month, as in the case at bar, or of silence, acquiescence or giving a receipt. In view of such similarity of conduct, it would seem to follow that even though there is, in any case, no previous express agreement to accept a salary less than that provided by law, the acceptance of the lesser amount could not be said to create an estoppel waiver and accord and satisfaction. That, in fact, is supported by the weight of authority. See Annotations, supra, particularly 118 A.L.R., pages 1468 to 1473, Taylor vs. City of Philadelphia, 328 Pa. 383, 196 A. 64, 68, and cases cited. In 46 C.J. 1027, it is said: "The acceptance of less compensation than that established by law for the office does not estop an officer from subsequently claiming the legal compensation." In De Boest vs. Gambell, 35 Or. 368, 58 P. 72, the court states: "The statutory salary of a public office belongs to the incumbent, as an incident of the office, and as a matter of right; and he is entitled to receive it, not by force of any contract, but because the law attaches it to the office. It cannot be reduced except by some valid statute, and hence any attempted reduction thereof by any officer or board is void, and the mere acceptance of such reduced salary does not constitute a waiver or create an estoppel."
(3) ILLEGAL CONTRACT AND ACCEPTANCE IN COMBINATION.
An express contract to accept less than the legal salary would seldom be followed by an immediate repudiation. The reduced salary would ordinarily be accepted at least for a limited time. It is not unlikely, for instance, that plaintiff, Ballangee, feared that a repudiation of his contract would have an adverse effect *Page 407 
upon him if and when he should become a candidate for his office at the succeeding general election. Now an express contract for a reduced salary, followed by acceptance thereof, would constitute an executed contract. It is held by some of the cases that when such illegal contract is executed, nothing further may be recovered. Williston on Contracts, Rev. Ed., Sec. 1730, Wright vs. Village of Wilder, 63 Ida. 122, 117 P.2d 1002. Williston, supra, states, however, that the opposite view, also supported by authorities, seems better. Aside from the cases cited by him, the following cases involved illegal agreements to accept a salary less than that provided by law, and such reduced salary was accepted. Hence, these cases present executed illegal agreements. In all of them, however, the officer was permitted to recover the amount withheld from his legal salary. George vs. City of Danville, 383 Ill. 454, 50 N.E.2d 467, Morrison vs. City of Fort Worth, 138 Tex. 10, 155 S.W.2d 908, Moore vs. White, 174 Tenn. 32, 122 S.W.2d 451, Bodenhofer vs. Hogan, 142 Ia. 321,120 N.W. 659, 19 Ann. Cas. 1073, Allen vs. City of Lawrence,318 Mass. 210, 61 N.E.2d 133, 160 A.L.R. 486, State ex rel. vs. Darby,345 Mo. 1002, 137 S.W.2d 532, Crutcher vs. Johnson County (Tex.Civ.App.), 79 S.W.2d 932, Peterson vs. City of Parsons,139 Kan. 701, 33 P.2d 715, Mack vs. City of Mayfield, 239 Ky. 420,39 S.W.2d 679, Bell vs. Town of Mabton, 165 Wn. 396, 5 P.2d 514, State ex rel. vs. Seattle, 176 Wn. 283, 28 P.2d 1020, Hamilton vs. Edmundson, 235 Ala. 97, 177 So. 743, See 22 Minn. L. Rev. 889. Other cases could be added. These cases fully sustain the view of the courts mentioned in the Annotation, 160 A.L.R. 491, noted above, that the invalidity of an acceptance of less than the legal salary follows as a necessary corollary of the holding that a contract to receive a lesser salary is invalid. We have already stated the fundamental reason therefor. And these *Page 408 
cases show that the view of Williston on Contracts, supra, is sustained by the great weight of authority and it should, we think, be followed by us. The agreement standing by itself was illegal and void and, hence, ineffective. The acceptance of payments in accordance therewith without protest, too, was as above shown, standing by itself, ineffective, and constituted no estoppel waiver or accord and satisfaction. In view of this, it is difficult to see, logically at least, that a combination of two ineffective factors could make an effective one. It would be like saying that zero plus zero makes one. Furthermore, it would mean that the conduct of plaintiff could grant power to the board of commissioners to fix the salary when, in fact, such power is vested solely in the legislature. It would further mean that the conduct of plaintiff by accepting the diminished salary could make a contract legal when it is otherwise illegal. It is true that strict logic cannot always be followed in establishing rules of law. But we think that public policy is in accord with the view taken by Williston on Contracts, supra. There is, in various ways, more or less pressure frequently brought or attempted to be brought on elective public officials and we hardly think it public policy to add to that pressure by holding that they may agree to waive a part of the salary fixed by the legislature. That body fixes salaries from time to time presumably in an amount to enable the officials to perform their duties honestly and efficiently. We think that that honesty and efficiency will be promoted then they know that they will receive the salary provided by law in full, regardless of any agreement or waiver to the contrary.
There are cases which hold that in periods of great public distress, public policy does not forbid the donation of part of the salary of public officials to the city, county, or state. We need not express any opinion on a *Page 409 
situation of that kind. Nothing like that appears in the case at bar. The contract relating to an acceptance of the diminished salary in the case at bar was apparently brought about by a mutual mistake of the law which should govern in this case. It follows from what we have here said that the judgment of the district court should be and is affirmed, the benefit of the judgment to accrue to the successor in interest of the plaintiff, Ballangee, deceased.
RINER, C.J., and KIMBALL, J. concur. *Page 410