BARRUS v. ENGEL.

CONSTITUTIONAL LAW — PUBLIC OFFICERS — SALARY—CIVIL SERVICE COMMISSION—DETROIT CHARTER.

A member of the civil service commission of the city of Detroit, acting without salary, was governed by the provisions of Act No. 279, Pub. Acts 1909, subd. *d*, § 5, and by the provisions of section 3, art. 16, of the Constitution, whereby municipal corporations are prohibited from increasing or changing the salary or emoluments of a public official after election or appointment. An attempted amendment to the charter of the city of Detroit, and city ordinance pursuant thereof authorizing the payment of a salary of $2,000 to the relator as a member of the commission was invalid and was in violation of the statutory and constitutional provisions. The fact that he was receiving no salary when the change was made in the charter ,provision did not relieve the relator of the limitation imposed by law.

Certiorari to Wayne; Codd, Van Zile, and Hally, JJ., presiding. Submitted April 20, 1915. (Calendar No. 25,582.) Decided June 7, 1915.

Mandamus by George W. Barrus, one of the civil service commissioners of the city of Detroit, against George Engel, city controller of the city of Detroit, to compel respondent to pay salary under an amendment to the charter of said city. An order denying the writ is reviewed by relator on certiorari. Affirmed.

*Robert T. Speed* (*Fred A. Baker* and *James D. May*, of counsel), for appellant.

*James H. Lee* (*Richard I. Lawson*, of counsel), for appellee.

STEERE, J. On April 7, 1913, an amendment to the charter of the city of Detroit, adding a new chapter providing for a civil service commission, was adopted by a majority vote of the electors of said city, being designated as:

"An act to amend an act to provide a charter for the city of Detroit, and to repeal all acts and parts of acts in conflict therewith, approved June 27, 1883, by adding a new chapter thereto for the purpose of providing for a civil service regulation for employees of the city of Detroit."

This amendment went into effect May 3, 1913. It made provision for a civil service commission composed of four members, electors of the city, to be appointed by the mayor, and specified that:

"Said commissioners shall hold no other office or employment under the United States, this State, or said city, or any other municipal corporation thereof. Said commissioners shall not receive any salary or other compensation for any duty or duties performed by them. * * * "

On June 6, 1913, relator was appointed a member of said commission for the term of two years, qualified and entered upon the duties of such office shortly thereafter, and had served continuously as a member of said commission up to the time of instituting these proceedings.

On November 3, 1914, section 1 of said chapter establishing a civil service commission was amended by a majority vote of the electors to read, so far as material to this inquiry, as follows:

"Each of said commissioners shall receive an annual salary of not more than three thousand dollars as the same may be determined by the common council."

Thereafter the common council of said city enacted an ordinance, approved by the mayor January 12, 1915, fixing the compensation of various city officers, in which was included the following paragraph:

"The civil service commission shall each be compensated in the sum of $2,000 per annum, except the chairman of the commission, who shall receive $2,500 per annum and shall devote at least three hours of each and every day, excepting Sundays and legal holidays, to the duties of his office."

Relator subsequently made application for his salary, as fixed by said ordinance, to respondent. As a prerequisite to their payment, it was respondent's duty as controller to audit all accounts and demands against the city and allow the same if found correct and legal. Under advice of the city's corporation counsel, he refused to consider said application favorably, on the ground that the amendment providing compensation for civil service commissioners could not become effective as to relator, and other commissioners then in office, in view of the constitutional prohibition and so-called "Home-Rule Law" for cities, which precluded changing the salary of any officer, elected or

appointed for a definite term, after ·commencement and during continuance of his term of office. Relator thereupon applied to the circuit ·court of Wayne county for a writ of mandamus to compel respondent, as controller, to audit, allow, and pay the amount of salary claimed due him according to the terms of said ordinance. Upon an order to show cause why such writ should not issue, a hearing was had and relator's application denied. . The proceedings were then removed into this court by certiorari, for review of said order of denial.

The constitutional provision and legislative enactment which actuated respondent in declining to audit relator's demand against the city and led the circuit court to sustain his action are as ·follows:

Section 3, art. 16, of the present Constitution, is as follows:

"Neither the legislature nor any municipal authority shall grant or authorize extra compensation to any public officer, agent, employee or contractor after the service has been rendered or the contract entered into. Salaries of public ·officers, except circuit judges, shall not be increased, nor shall the salary of any public officer be decreased, after election or appointment."

Under article 8 of said Constitution, the legislature was required to enact a general law for incorporation of cities giving them power to frame, adopt, and amend their charters and to pass laws and ordinances "subject to the Constitution and general laws of the State."

In harmony with this constitutional requirement, the legislature enacted Act No. 279, Pub. Acts 1909, called the "Home-Rule Act" for cities, which, amongst other things (subdivision d, § 5, 2 How. Stat. [2d Ed.] § 5446), provided:

"No city shall have power:  *  *  *  (d) To change the salary or emoluments of any public official

after his election or appointment or during his term of office; nor shall the term of any public official be shortened or extended beyond the period for which he was elected or appointed, unless he resign or be removed for cause."

Relator contends, in brief, that because no salary or compensation was fixed or provided for in the first instance, by the charter amendment or "civil service act" under which he was appointed, the prohibitions quoted do not apply, and therefore an immediately operative salary for civil service commissioners could subsequently be provided for, at any time the electors and municipal authorities might be so inclined. In support of this contention, counsel cite section 858 of Mechem on Pub. Officers, touching constitutional provisions prohibiting increase or decrease of officers' salaries during their term, wherein it is said:

"Where, however, the salary or compensation has not been fixed at all at the time of the election or appointment, this provision does not prevent its being fixed after the term begins"

—together with several decisions from other States tending, as is urged, to sustain that proposition.

No direct authority upon the exact question presented here is to be found in our decisions. The wisdom of a provision prohibiting any change either by increase or reduction of a public officer's salary during his term has been universally recognized. Such provisions are common in constitutions and statutes of the various States, and the courts have been firm in restraining attempts to evade them. This court has been in line with the general rule when deciding cases where phases of the question have arisen. *Douvielle* v. *Supervisors*, 40 Mich. 585; *Anderson* v. *Hill*, 54 Mich. 477 (20 N. W. 549); *Olds* v. *Land Com'r*, 134 Mich. 442 (86 N. W. 956, 96 N. W. 508); *Chase* v. *Hart*, 162 Mich. 74 (127 N. W. 256).

Of the cases cited from other jurisdictions in support of relator's contention that the restriction is not applicable to a case like this where no salary or compensation is attached to the office, as "there can be no increase or diminution of a salary where none has been provided," it may be said generally that those cases involved facts and statutes materially different from those involved here, and, where considered, the rule is recognized that, when those having authority in the matter of fixing salaries have once acted and made a determination, their power is exhausted as to all incumbents taking office pursuant to such determination.

We find here not only the constitutional prohibition, but that in the amendment itself which created this office those empowered to determine the matter of compensation exercised that authority, and declared in express language that no salary or other compensation should attach to the office, and also that the "Home-Rule Law" which authorized the amendment again declares that a city has no power to change the salary or emoluments of a public official after his appointment or election.

Restrictive provisions of this class are universally recognized as in the interest of good government and founded on sound reasons of public policy. They are adopted for the two-fold purpose of protecting the public by restraining those in office from taking advantage of their positions and official influence to unduly secure added compensation not contemplated and to which they were not entitled when they were selected for and accepted office, and also to secure each individual officer in enjoyment of the emoluments provided and rightfully to be expected when he accepted his office, by protectiing him from any unfriendly power which might, for any reason, otherwise reduce or abolish them. While the person ac-

cepting an office without salary or other emoluments attached, and in creating which it was expressly declared there should be none, could need no protection in that particular, it is evident that the paramount public interests are as much exposed to the contingency which the prohibition is intended to guard against as though he commanded a salary. This reason for the prohibition seems to apply with equal, if not greater, force to one holding a nonsalaried office.

Without reviewing them in detail, it may be said of the cases cited by relator that, as a rule, the offices to which they relate were of the kind usually recognized as carrying a salary or fees, and the evidence disclosed that either compensation was contemplated and intended, or had been provided for, but not yet fixed as to amount, while here all uncertainty and possibility of misunderstanding had been eliminated by express provision to the contrary. The matter of compensation had been acted upon and settled, or fixed, in the negative, and relator accepted the office knowing that it did not entitle him to demand, as a legal right, any compensation for his services.

In *Perry* v. *Village of Cheboygan*, 55 Mich. 250 (21 N. W. 333), plaintiff had been appointed a member of the water commission of that municipality without any fixed compensation, and later sought to recover for extra services performed while acting as such official. This court determined from an examination of defendant's charter that its provisions indicated an intentional omission to provide compensation for members of that board, and said:

"It follows that the members accepting such office must be deemed to have done so with knowledge of and with reference to the provisions of the charter relating to the services which they were to perform, and that such services were to be rendered gratuitously.

"The court erred, therefore, in refusing to charge

the jury, as requested by defendant in the second request, as follows: 'The council are under no obligation to make compensation to any of the officers of the corporation unless the charter expressly provides that compensation shall be made, or that the officers are entitled to compensation.' "

This ruling as to his legal status, tested by conditions existing at the time he assumed office, has significance in connection with the views expressed in *Garvie* v. *City of Hartford*, 54 Conn. 440 (7 Atl. 723), which we regard as nearest in point here of any case we have been able to consult, and from which we quote with approval. In that case it was sought to award certain members of the common council of the city of Hartford pay for extra services rendered while acting as members of a joint standing committee. The office of councilman being an honorary one and without compensation, it was urged, as here, that the constitutional prohibition, which is similar to ours, did not apply. In overruling that contention, the court said, in part:

"The honor inseparable from the office has stood in the place of pecuniary compensation. Therefore the members in whose favor the resolution was passed accepted the office with knowledge of the fact that they then had neither legal nor equitable claim to compensation. Simultaneously with their acceptance there came into operation a binding agreement that they had entered upon an office to which no compensation then attached. Upon them the constitutional provision bore as upon any contractor, employee, or servant. They had undertaken an office upon an explicit agreement as to compensation then affixed; the contractor undertakes to furnish materials and perform labor for a stipulated price; the servant to labor upon fixed terms. The purpose of the provision, applicable alike to all, is to make it legally impossible for any one of them to receive a greater sum, either by payment or gift, for performing the duties pertaining to his office, or for fulfilling the terms of his contract for furnishing materials or for personal

service, than it would have been legally possible for him to obtain by the judgment of a court upon the terms of his contract as originally made. Although, as is claimed by the defendants, it is mathematically impossible to add to nothing, nevertheless it is constitutionally possible to prohibit a gift to one who has no legal right to demand anything. The defendants are bound by their acceptance of an office without compensation."

In harmony with these views, the conclusion is reached that to construe the provisions under consideration as excepting all public officers for whom no compensation is provided or intended would be to follow narrow and technical reasoning contrary to the purpose, spirit, and intent of the prohibition as disclosed by, and fairly within, the meaning of the language used, taken in its entirety.

The order of the Wayne county circuit court, denying relator's application for a writ of mandamus, is affirmed.

BROOKE, C. J., and MCALVAY, KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.