STATE EX REL. JACKSON, RELATOR, *v.* PORTER, STATE
AUDITOR, RESPONDENT.

(No. 4,540.)

(Submitted January 12, 1920.   Decided March 8, 1920.)

[188 Pac. 375.]

*Office and Officers—District Judges—Salaries—Increase—Constitution.*

Office and Officers—Salaries—Increase—Purpose of Constitutional Limitations.
  1. The purpose of the constitutional limitations (Art. V, sec. 31, Art. VII, sec. 4, Art. VIII, sec. 29) against the passage of laws increasing (or diminishing) the salaries of certain public officers during the term for which they were elected, is to remove the temptation from the legislature to control the executive and judicial branches of government by promises of reward in the form of increased compensation (or threats of punishment by way of reduced salaries).

Same—Enforcement of Constitutional Limitations.
  2.  The rule established by the above constitutional limitations must be strictly enforced, provided the reason underlying it is present; whenever the reason for it ceases, so does the rule itself.
District Judges—Salaries—Who Entitled to Increase.
  3.  *Held,* that while under the constitutional limitations above (paragraph 1) a district judge elected prior to, and serving at the time of, the passage of an Act increasing the salary of the office, would not have been entitled to the increase, his successor appointed to fill the vacancy created by the former's resignation some seven months after its passage, could rightfully demand the enlarged compensation, the circumstances removing the case from the operation of the rule referred to in paragraph 1 above.  (MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HURLY dissenting.)

PROCEEDING in *mandamus* by the State of Montana, on the relation of Joseph R. Jackson, to compel George Porter, State Auditor of the State of Montana, to allow a claim for salary presented.  Peremptory writ ordered to issue.

*Mr. W. A. Rotering, Mr. William Meyer* and *Mr. Lester Loble,* for Relator, submitted a brief; *Mr. Rotering* argued the cause orally.

*Mr. S. C. Ford,* Attorney General, and *Mr. Frank Woody,* Assistant Attorney General, submitted a brief; *Mr. Woody* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

At the general election in November, 1916, John V. Dwyer was elected a district judge of the second judicial district of this state.  He qualified and entered upon the discharge of his duties and continued therein until the sixth day of October, 1919, when he resigned.  On October 9 the relator herein was appointed to fill the vacancy and duly qualified.  In November, 1916, when Judge Dwyer was elected, and in January, 1917, when he entered upon the discharge of his duties, the salary of a district judge was $4,000 per year.  In March, 1919, section 292, Revised Codes, was amended and the salary of a district judge increased from $4,000 to $4,800 per year.  (Laws 1919, p. 337.)  The relator having presented his claim for salary

under the amended statute, and the state auditor having refused to allow it to the extent of $120, this proceeding was instituted.

The state Constitution provides:

Section 31 (Article V): "Except as otherwise provided in this Constitution, no law shall extend the term of any public officer, or increase or diminish his salary or emolument after his election or appointment: Provided, that this shall not be construed to forbid the Legislative Assembly from fixing the salaries or emoluments of those officers first elected or appointed under this Constitution, where such salaries or emoluments are not fixed by this Constitution."

Section 4 (Article VII): "Until otherwise provided by law, the governor, secretary of state, state auditor, treasurer, attorney general and superintendent of public instruction, shall quarterly, as due, during their continuance in office, receive for their services compensation, which is fixed as follows: [Then follows the schedule of salaries.] * * * The compensation enumerated shall be in full for all services by said officers respectively rendered in any official capacity or employment whatever during their respective terms of office, and the salary of no official shall be increased during his term of office."

Section 29 (Article VIII): "The justices of the Supreme Court and the judges of the district courts shall each be paid quarterly by the state, a salary, which shall not be increased or diminished during the terms for which they shall have been respectively elected."

Is the relator entitled to the increased salary provided by the Act of March 7, 1919, or is he limited to the amount of salary provided by law at the time Judge Dwyer was elected and entered upon the discharge of his duties? A like question has been before the courts of several of the states, but the decisions are in hopeless conflict. In practically every case to which our attention has been directed, the decision is made to depend upon the peculiar phraseology of the constitutional provision under review, without reference to its history or purpose. If we were to pursue the same course, we would be confronted with one

rule declared for executive officers and an altogether different one for members of the judiciary. If section 4, Article VII, above, be construed literally, then it is within the power of the · legislature to reduce the salary of the governor, secretary of state, auditor, treasurer, attorney general or superintendent of public instruction, after he has been elected and has assumed the duties of his office, and compel him to accept the reduced compensation (even though it be but nominal) during the remainder of his term, or resign, and if he resigned his successor would occupy no more advantageous position. In other words, under such a construction, the executive officers would be absolutely at the mercy of the legislature, but such a construction would be as ridiculous as it would be destructive of the very foundation of our form of government.

The government of the United States, and the government of [1, 2] every one of our states, has for its foundation principle the axiom of democracy that the powers of government in a republic can be exercised with security to the people only when apportioned among the three co-ordinate branches, which shall be, as nearly as may be, independent of each other. The disregard of this principle by monarchial governments of Europe had led to such excesses and abuses that, when the framers of our federal Constitution came to prepare the fundamental law for the guidance of this nation, they profited by experience and avoided those defects in other schemes of government, and our state constitutions have but followed in their wake. The discussion, in the Federalist, of the constitutional limitations upon the power of the congress over official salaries, and the further consideration of the subject by Chancellor Kent, disclose the contemporaneous judgment of the times. (1 Kent's Commentaries, p. 293; The Federalist, No. 79; 1 Scott's Federalist and Other Constitutional Papers, p. 431.) If the law-making power had the power to interfere *ad libitum* with the compensation of public officers, it could coerce action favorable to its own views by the promise of increased salary or the threat of violent reduction. Hamilton said in the Federalist: "A power over a

man's subsistence amounts to a power over his will.'' The pro-
vision in the federal Constitution and the corresponding provi-
sion in the several state constitutions all have the same history
and the same purpose in view.   The purpose is to secure, as far
as possible, the independence of each co-ordinate branch of gov-
ernment, and to that end relieve the law-making branch from
the importunities of office-holders who might seek increased com-
pensation, not for the office, but for themselves, and what was of
infinitely greater consequence, remove from the lawmakers the
temptation to control the other branches of government by
promises of reward in the form of increased compensation or
threats of punishment by way of reduced salaries; or, stated
differently, the sole purpose of the constitutional limitations is
to remove from the sphere of temptation every public officer
whose office is created by the Constitution and whose official con-
duct in the remotest degree might be influenced by the hope of
reward or the fear of punishment.   So far as there is reason for
the rule which underlies the limitations, it must be enforced
with the utmost rigor, but whenever the reason for the rule
ceases, so does the rule itself.

In the absence of constitutional inhibition, there cannot be a
question that the legislature could have increased judicial sal-
aries and could have made the increase inure immediately to the
benefit of every judge of the state; but because of the possi-
bilities of the abuse of such power our Constitution wisely for-
bade that the increase should affect anyone whose official con-
duct under any circumstances might be influenced by the result.
If Judge Dwyer had continued in office during the full term of
four years for which he was elected, there is every reason why
he should not have received the benefit of the increase in salary
provided by the amended Act passed after he entered upon the
discharge of the duties of his office.   At the time the bill for the
amended Act was before the legislature in March, 1919, it was
impossible that any member could have known that Judge
Dwyer would resign in October following and that Joseph R.
Jackson would become his successor.   No possible importunity

on the part of Mr. Jackson in March, 1919, could have influenced the enactment of the amended statute for his own benefit, and no legislative promises then made to Mr. Jackson could have tended to sway his judicial mind seven months later when for the first time he became clothed with judicial power and authority. The circumstances remove relator's case from the operation of the rule.

The amended Act became effective in March, 1919, and there is not any reason why Judge Jackson, who was not appointed until October following, should not receive the salary fixed by law at the time he entered upon the discharge of his duties. The three provisions of our Constitution quoted above are clothed in different language, but there is no magic in mere words. They mean the same thing, have the same history, and are intended to accomplish the same end.

No useful purpose could be served by a review of the decided cases. In our judgment, they do not touch the principle which underlies the constitutional limitations involved. They are cited for reference only. The leading cases which hold that the restriction does not apply in a case of this character are: *Gaines v. Horrigan*, 72 Tenn. (4 Lea) 608; *State v. Frear*, 138 Wis. 536, 16 Ann. Cas. 1019, 120 N. W. 216; *Board v. Lee*, 76 N. J. L. 327, 70 Atl. 925; *Carter v. State* (Okl.), 186 Pac. 464. *Contra: Larew v. Newman*, 81 Cal. 588, 23 Pac. 227; *Storke v. Goux*, 129 Cal. 526, 62 Pac. 68; *Harrison v. Colgan*, 148 Cal. 69, 82 Pac. 674; *Foreman v. People*, 209 Ill. 567, 71 N. E. 35; *Somers v. State*, 5 S. D. 584, 59 N. W. 962.

It is ordered, adjudged and decreed that a peremptory writ of mandate issue, directed to the state auditor, commanding him forthwith to issue to the relator a state warrant for the sum of $120.

*Writ granted.*

. ASSOCIATE JUSTICES MATTHEWS and COOPER concur.

MR. JUSTICE HURLY: I dissent. I think that "term," as used in the Constitution, refers to the office and not to the incumbent. In support of this view, see *Larew v. Newman*, 81 Cal. 588, 23

Pac. 227; *Storke* v. *Goux,* 129 Cal. 526, 62 Pac. 68; *Harrison* v. *Colgan,* 148 Cal. 69, 82 Pac. 674; *Foreman* v. *People ex rel. Mc-Ewen,* 209 Ill. 567, 71 N. E. 35; *Somers* v. *State,* 5 S. D. 584, 59 N. W. 962; *Parmater* v. *State,* 102 Ind. 95, 3 N. E. 383.

In my view, also, section 34 of Article VIII of the Constitution, intends that one appointed or elected to a judicial office to fill a vacancy, holds, not a separate term, but only a portion of the term for which the person he succeeds was elected.

MR. CHIEF JUSTICE BRANTLY : I concur in the dissenting opinion of MR. JUSTICE HURLY.