Matthias, J.
 

 Are members of the county board of elections public officers within the meaning of Section 20, Article II of the Constitution of Ohio?
 

 Section 20, Article II of the Constitution of Ohio, provides as follows:
 

 “The General Assembly, in cases not provided for in this Constitution, shall fix the • term of office and the compensation of all officers; but no change therein shall affect the' salary of any officer during his existing term, unless the office be abolished.”
 

 If the relators are officers they are prohibited by the limitations of the Constitution from receiving increased compensation during their term of office.
 

 It is stated in 42 American Jurisprudence, page 880, that
 

 “* * * Ordinarily and generally, a public office is defined to be the right, authority, and duty created and conferred by law, the tenure of which is not transient, occasional, or incidental, by which for a given period an individual is invested with power to perform a public function for the benefit of the public.
 
 *
 
 * *”
 

 On page 881 of the same volume — •
 

 “* * * It (a public office) must have some permanency and continuity and possess a' delegation of a portion of the sovereign power of government to be exercised for the benefit of the public. The powers conferred and the duties to be discharged must be defined, directly or impliedly, by the legislature ór through legislative authority; and the duties must be performed independently and without control of
 
 *5
 
 a superior officer, other thau the law, unless they are those of an inferior or subordinate officer, created or authorized by the legislature and by it placed under the general control of a superior officer or body.
 
 * * *”
 

 The question presented has been considered in numerous cases by this court. The following language from the opinion of Judge Jones, in the case of
 
 State, ex rel. Landis,
 
 v.
 
 Board of Commissioners of Butler County,
 
 95 Ohio St., 157, 117 N. E., 919, is pertinent:
 

 “The usual criteria in determining whether a position is a public office are durability of tenure, oath, bond, emoluments, the independency of the functions exercised by the appointee, and the character of the duties imposed upon him. But it has been held by this court that while an oath, bond and compensation are usually elements in determining whether a position is a public office they are not always necessary. * * * The chief and most decisive characteristic of a public office is determined by the quality of the duties with which the appointee is invested, and by the fact that such duties are conferred upon the appointee by law. If official duties are prescribed by statute, and their performance involves the exercise of continuing, independent, political or governmental functions, then the position is a public office and not an employment.
 

 “ * * * It is no longer an open question in this state that ‘to constitute a public office, * * * it is essential that certain independent public duties,
 
 a fart of the sovereignty of the state,
 
 should be appointed to it by law.’
 
 State, ex rel. Attorney General,
 
 v.
 
 Jennings,
 
 57 Ohio St., 415;
 
 State, ex rel. Armstrong,
 
 v.
 
 Halliday, Aud.,
 
 61 Ohio St., 171;
 
 Palmer
 
 v.
 
 Zeigler,
 
 76 Ohio St., 210, and
 
 State, ex rel.,
 
 v.
 
 Brennan,
 
 49 Ohio St., 33.
 

 “In all of these cases it is manifest that the functional powers imposed must be those which constitute a part of the sovereignty of the state. But as stated by Spear, O. J., in
 
 State, ex rel. Hogan, Atty. Genl.,
 
 v.
 
 Hunt,
 
 84 Ohio St., at page 149, without a satisfactory
 
 *6
 
 definition of what is the ‘sovereignty of the country’ the term ‘office’ is not adequately defined. If specific statutory and independent duties are imposed upon an appointee in relation to the exercise of the police powers of the state, if the appointee is invested with independent power in the disposition of public property or with power to incur financial obligations upon the part of the county or state, if he is empowered to act in those multitudinous cases involving business or political dealings between individuals and the public, wherein the latter must necessarily act through an official agency, then such functions are a part of .the sovereignty of the state.”
 

 This same proposition is restated in the case of
 
 State, ex rel. Newman, State Librarian,
 
 v.
 
 Skinner,
 
 128 Ohio St., 325, 191 N. E., 127, as follows:
 

 ‘ ‘ A public officer, as distinguished from an employee, must be invested by law with a portion of the sovereignty of the state and authorized to exercise functions either of an executive, legislative or judicial character. ’ ’
 

 The application of these rules to the undisputed facts involved here requires an examination of the statutes under which relators derive their authority.
 

 Section 4785-8, General Code, provides:
 

 ‘ ‘ There shall be in each county of the state, a board of elections consisting of four qualified electors of the county, who shall be appointed by the Secretary of State, as representatives of the Secretary of State,
 
 to serve for the term of four years
 
 and until their successors have been appointed and have qualified.
 
 On the first day of March
 
 in even-numbered years the Secretary of State shall appoint two of such board members, one of whom shall be from the political party which cast the highest number of votes in the state for the office of governor at the last preceding state election, and the' other shall be from the political party
 
 *7
 
 which east the next highest vote for governor at such election. * * *” (Emphasis supplied.)
 

 Section 4785-12, General Code, provides:
 

 “Before entering upon the duties of their respective offices each member of the board shall appear before a person authorized to administer oaths and take and subscribe to an oath that he will support the Constitution of the United States and of the state of Ohio, will perform the duties of the office to the best of his ability, will enforce the election laws, and will protect and preserve the records and property pertaining to elections. Such oath shall be filed with the clerk of the Common Pleas Court of the county wherein the officer resides. ’ ’
 

 Section 4785-13, General Code, provides in part:
 

 “The boards of elections, within their respective jurisdictions by a majority vote shall exercise, in the manner herein provided, all powers granted to such boards in this act, and shall perform all the duties imposed by law which shall include the following:
 

 “a. To establish, define, provide, rearrange and combine election precincts.
 

 “b. To fix and provide the places for registration, when required, and for holding primaries and elections.
 

 “d. To appoint and remove its clerk, assistant clerks, and employees, and all registrars, judges, clerks and other officers of elections, and to fill vacancies, and to designate the ward or district and precinct in which each shall serve.
 

 “e. To make and issue such rules, regulations and instructions, not inconsistent with law, or the rules established by the chief election officer, as they may deem necessary for the guidance of election officers and voters.
 

 “f. To advertise and contract for the printing of
 
 *8
 
 all ballots, and other supplies used in registrations and elections.
 

 “j. To investigate irregularities, nonperformance of duties, or violations of laws by election officers and other persons; to administer oaths, issue subpoenas, summon witnesses, and compel the production of books, papers, records, and other evidence in connection with any such investigation; and to report the facts to the prosecuting attorney.
 

 “k. To review, examine and certify the sufficiency and validity of petitions and nomination papers.
 

 “m. To issue certificates of election on forms to be prescribed by the Secretary of State.”
 

 Under the provisions of Section 4785-20, General Code, payment of the expense of conducting elections is made upon the vouchers of the board.
 

 The relators as required by statute have been appointed to office for a definite term and have taken an oath of office. Primarily, the question presented is whether, under the authority granted to them by Section 4785-13, General Code, they are “invested by law with a portion of the sovereignty of the state and authorized to exercise functions either of an executive, legislative or judicial character.”
 

 By statute these relators are vested with authority to designate the places where elections are to be held, to arrange for the registration of voters, to make the rules and regulations necessary for the guidance of the other election officers and voters, to investigate irregularities, nonperformance of duties or violation of law by election officers or other persons, to review, examine and certify the sufficiency and validity of petitions and nominating papers and to issue certificates of election, for which purpose they are empowered to compel the attendance of witnesses and conduct hearings.
 

 
 *9
 
 The conduct of elections is clearly one of the functions involving the sovereignty of the state, and the powers given by law to the relators authorize them to exercise independent judgment on matters clearly sovereign in character. The power thus conferred coupled with the other indicia of office set forth in the statutes above recited compels the conclusion that the relators are public “officers” within the meaning of Section 20, Article II of the Constitution of Ohio.
 

 The writ is denied.
 

 Writ denied.
 

 Weygandt, C. J., Hast, Zimmerman, Stewart, Turner and Taet, JJ., concur.