ED SHUBAT ET AL., PLAINTIFF AND RESPONDENT, *v.* THE
STATE OF MONTANA, DEFENDANT AND APPELLANT.

No. 11962.
Submitted February 8, 1971.
Decided April 1, 1971.
Rehearing Denied April 15, 1971.
484 P.2d 278.

144

Robert L. Woodahl, Atty. Gen.; Lawrence Huss, Asst. Atty. Gen. (argued), John Northey, Asst. Atty. Gen., Helena, for defendant and appellant.

Sandall, Moses & Cavan, Charles F. Moses and Russell K. Fillner (argued), Billings, for plaintiffs and respondents.

PER CURIAM:

This is an appeal from a judgment of the district court, which declaratory judgment found for the plaintiffs and against the State of Montana.

The plaintiffs are representative county officials, bringing the suit on their own behalf and on behalf of all other county officials and employees similarily situated. Plaintiffs brought the action in district court for a declaratory judgment to determine whether they were entitled during their present term of office to certain pay raises granted under section 1 of Chapter 284, Session Laws of 1969, codified as section 25-605, R.C.M. 1947.

Primarily involved is the effect of Article V, section 31 of the Constitution of Montana.

Article V, § 31 provides:

"Sec. 31, Except as otherwise provided in this constitution, no law shall extend the term of any public officer, or increase or diminish his salary or emolument after his election or appointment: provided, that this shall not be construed to forbid the legislative assembly from fixing the salaries or emoluments of those officers first elected or appointed under this constitution, where such salaries or emoluments are not fixed by this constitution."

Section 25-605, R.C.M.1947, is popularly called the formula salary law. Simply put, the law provides the computation of the salaries of the respective officers by adding salaries as listed in

respective columns entitled, "Population of County" and Taxable Valuation of County." This formula type salary bill was first enacted in 1945.

All of the plaintiffs involved were elected or appointed to a term of office before the amendment of section 25-605 by the 1969 session of the legislature. The district court granted summary judgment, which judgment simply adjudged that the plaintiffs and all those similarily situated are legally entitled to receive the increased salaries forthwith fixed by the amended section 25-605.

■ The issue presented is whether officers elected or appointed before the enactment of section 1, Chapter 284, Laws of 1969, (codified and hereinafter referred to as section 25-605), are entitled to the raises in salary or emoluments provided therein during their present term.

This Court has previously considered Article V, § 31 in several cases. In State ex rel. Jackson v. Porter, 57 Mont. 343, 347, 188 P. 375, 376, in the year 1920 this Court said in part as follows:

"The provision in the federal Constitution and the corresponding provision in the several state Constitutions all have the same history and the same purpose in view. The purpose is to secure, as far as possible, the independence of each co-ordinate branch of government, and to that end relieve the lawmaking branch from the importunities of officeholders who might seek increased compensation, not for the office, but for themselves, and what was of infinitely greater consequence, remove from the lawmakers the temptation to control the other branches of government by promises of reward in the form of increased compensation or threats of punishment by way of reduced salaries; or stated differently, the sole purpose of the constitutional limitations is to remove from the sphere of temptation every public officer whose office is created by the Constitution and whose official conduct in the remotest degree might be influenced by the hope of reward or fear of punishment. So

far as there is reason for the rule which underlies the limitations, it must be enforced with the utmost rigor, but whenever the reason for the rule ceases, so does the rule itself.

"In the absence of constitutional inhibition, there cannot be a question that the Legislature could have increased judicial salaries and could have made the increase inure immediately to the benefit of every judge of the state; but because of the possibilities of the abuse of such power our Constitution wisely forbade that the increase should affect any one whose official conduct under any circumstances might be influenced by the result."

The Court was dealing with an *across the board* pay raise granted to the district judges of the state by virtue of chapter 176, Session Laws of 1919, which stated:

"Section 1. That section 292 of the Compiled Laws of the State of Montana of 1907, be amended to read as follows:

"Section 292. The annual salary of each District Judge is Four Thousand and eight hundred dollars.

"Section 2. All Acts and parts of Acts in conflict herewith are hereby repealed."

The Court in the *Jackson* case determined that the constitutional restriction was not applicable to a judge who was appointed to fill a vacancy after chapter 176, Session Laws of 1919, had been passed.

Next, this Court decided Broadwater v. Kendig, 80 Mont. 515, 261 P. 264, in the year 1927. In that case a mayor was beginning his second term of office on May 1, 1926. During his first term he had received $600 per year. On April 22, 1926 the city council passed an ordinance raising the salary to $165 per month. This ordinance became effective on May 22, 1926. Mayor McKelvey had been re-elected prior to the adoption of the new ordinance on April 22, but did not begin his second term until May 1.

In *Kendig* this Court held that Article V. Section 31 did not apply because it applies only to the power of the Legislature. The Court based its decision on a statute which forbade in-

creases to certain city officials "during their term of office" and explained that the raise given to McKelvey was made effective *before* the mayor assumed his new term.

In Poorman v. State Board of Equalization, 99 Mont. 543, 45 P.2d 307, the Court held that income taxes did not decrease the salary during a term of office.

Next the Court had Adami v. County of Lewis and Clark, 114 Mont. 557, 559, 138 P.2d 969, (and its companion case Whalen v. Bd. of Co. Commissioners of Lewis and Clark County) in 1943. The legislature in 1943 enacted Chapter 169, Session Laws of 1943, which sought to give salary increases of 10% to all elected county officials. The legislature had declared an emergency in the wartime situation. Nevertheless this Court in a unanimous opinion held the Act to be in excess of legislative authority as it applied to those county officers elected or appointed prior to its enactment. The Court said:

"There can be no possible doubt that the decision with reference to Chapter 169 is correct, and that the legislative intent to make it effective as to the terms of persons elected or appointed prior to its effective date is unconstitutional as in excess of the legislative power. The people could hardly have made clearer or more definite the provision of section 31, of Article V forbidding the legislature either to increase or to diminish the salary or emolument of any officer after his election or appointment. On the other hand, it is apparent that the constitutional provision does not forbid the application of Chapter 169 to an officer whose election or appointment occurs after the effective date of the Act, and that as to him Chapter 169 is valid."

Thus, both *Jackson* and *Adami* considered the question of across the board raises and found them to be unconstitutional as applied to officers elected or appointed before the enactment of the raises.

And, finally, so far as historical precedent in Montana is concerned, the Legislature in 1967 by Chapter 154 submitted to the voters:

"An Act to Submit to the Qualified Electors of Montana An Amendment to Section 31 of Article V, of the Constitution of the State of Montana, Relating to the Terms of Office and Salaries of Public Officers; to Remove the Prohibition Against Increase of Such Salaries During the Terms for Which Such Officers Have Been Elected or Appointed.

"*Be it enacted by the Legislative Assembly of the State of Montana:*

"Section 1. Section 31, Article V, of the constitution of the State of Montana, is amended to read as follows:

" 'Sec. 31. Except as otherwise provided in this constitution, no law shall extend the term of any public officer, or diminish his salary or emolument after his election or appointment; provided, that this shall not be construed to forbid the legislative assembly from fixing the salaries or emoluments of those officers first elected or appointed under this constitution, where such salaries or emoluments are not fixed by this constitution.'

"Section 2. When this amendment is submitted to the electors of the State of Montana, there shall be printed on the ballot the full title and section 1 of this act and the following words:

" '[ ] For the above amendment.

[ ] Against the above amendment.'

"Approved: February 24, 1967."

The voters in the general election of 1968, voted 137,587 against to 87,027 for, thus rejecting the amendment which would have taken out of Art. V, § 31 the prohibited "increase."

Also, the legislature of 1963 by Chapter 92 submitted to the voters Article VIII, § 29, which contained an identical prohibition against increases in salaries or emoluments to judicial officers. In the general election in 1964 the people voted 65,679 against and 119,229 for, thus removing the prohibited "increase" as to judicial officers.

In the face of this historical precedent the instant action for declaratory judgment was brought to determine the validity of section 25-605 as it applies to increases in salary to county of-

ficers elected or appointed prior to the Act. The district judge found that the raises were effective as to those officers elected or appointed before the enactment of section 25-605 and granted judgment accordingly.

The prohibition in Art V, § 31 is absolute. Its terms encompass all increases or decreases in salary. It makes no allowance for exceptions even for cost of living increases, emergency war increases or any other increases. The admonition cannot be more clear, and the will of the people to retain the prohibitory language was clearly expressed in the referendum measure voted upon in 1968.

However, since the district court decided as it did, and furnished no reason or authority therefor, we will discuss the issues as set forth in the respondents' exhaustive brief.

The respondents put forth three propositions. In the first the respondents urge that in State ex rel. Jackson v. Porter the correct interpretation of Art. V, § 31 was made, but that this Court had misapplied the holding since. Respondents would interpret *Jackson* to mean that where the reason for the rule does not apply, the rule has no application; and would go further to analyze the present increase in salary provided by section 25-605, R.C.M.1947 to the effect that no reasons as expressed by Justice Holloway in *Jackson* appear. In *Jackson*, this Court said:

"The government of the United States, and the government of every one of our states, has for its foundation principle the axiom of democracy that the powers of government in a republic can be exercised with security to the people only when apportioned among the three coordinate branches, which shall be, as nearly as may be, independent of each other. The disregard of this principle by monarchial governments of Europe had led to such excesses and abuses that when the framers of our federal Constitution came to prepare the fundamental law for the guidance of this nation, they profited by experience and avoided those defects in other schemes of government, and our state Constitutions have but followed in their wake. The discussion, in

the Federalist, of the constitutional limitations upon the power of the Congress over official salaries, and the further consideration of the subject by Chancellor Kent, disclose the contemporaneous judgment of the times. 1 Kent's Com. p. 293; The Federalist, No. 79; 1 Scott's Federalist and other Constitutional Papers, p. 431. If the lawmaking power had the power to interfer *ad libitum* with the compensation of public officers, it could coerce action favorable to its own views by the promise of increased salary or the threat of violent reduction. Hamilton said in the Federalist: 'A power over a man's subsistence amounts to a power over his will.' The provision in the federal Constitution and the corresponding provision in the several state Constitutions all have the same history and the same purpose in view. The purpose is to secure, as far as possible, the independence of each co-ordinate branch of government, and to that end relieve the lawmaking branch from the importunities of *officeholders* who might seek increased compensation, not for the office, but for *themselves,* and what was of infinitely greater consequence, remove from the lawmakers the temptation to control the other branches of government by promises of reward in the form of increased compensation or threats of punishment by way of reduced salaries; or, stated differently, *the sole purpose of the constitutional limitations is to remove from the sphere of temptation every public officer whose office is created by the Constitution and whose official conduct in the remotest degree might be influenced by the hope of reward or the fear of punishment.''* (Emphasis supplied.)

The respondents then argue that when the history and the purpose of the constitutional provisions here involved are considered, it becomes apparent that these constitutional provisions were never intended to apply to the *office,* but rather to the individual officers.

But, in *Jackson* the Court went on to say at page 347 of 114 Mont., at page 376 of P.:

''In the absence of constitutional inhibition, there cannot be a question that the Legislature could have increased judicial

salaries and could have made the increase inure immediately to the benefit of *every judge of the state;* but because of the *possibilities of the abuse of such power* our Constitution wisely forbade that the increase should affect any one whose official conduct under any circumstances might be influenced by the result.'' (Emphasis supplied.)

Returning to the respondents' position that the reason for the rule enunciated in *Jackson* is no longer present and therefore the rule should no longer apply, we have been unable to find a single case to support it in its purest application. In that regard, if such were the rule no mandatory constitutional prohibition could remain inviolate—nay, they could all be cast aside by the declaration that the reason no longer exists.

Various other states have adopted similar constitutional restrictions against increase or decrease of salaries of various elected officials either after election or appointment, or during their term of office. The courts of these states have applied the rule enunciated in *Jackson* to cases brought under their constitutional restrictions, including cases involving across the board raises. For example see: Arizona: State Consol. Pub. Co. v. Hill, 39 Ariz. 21, 3 P.2d 525; Colorado: Lancaster v. Board of Com'rs of Jefferson Co., 115 Colo. 261, 171 P. 987; Maryland: County Com'rs of Calvert County v. Monnett, 164 Md. 101, 164 A. 155; and Pressman v. D'Alesandro, 211 Md. 50, 125 A.2d 35; Michigan: Vigelius v. Vairo, 317 Mich. 138, 26 N.W.2d 737, citing Schurtz v. City of Grand Rapids, 205 Mich. 102, 171 N.W. 463; Missouri: Mooney v. County of St. Louis, 286 S.W.2d 763; Nebraska: Ramsey v. Gage County, 153 Neb. 24, 43 N.W.2d 593; Ohio: State ex rel. Milburn v. Pethtel, 153 Ohio St. 1, 90 N.E.2d 686; Pennsylvania: Appeal of Loushay, 169 Pa.Super. 543, 83 A.2d 408, and Berks County Institution District v. Schoener, 383 Pa. 209, 117 A.2d 740; Virginia: Jackson v. Hodges, 176 Va. 89, 10 S.E.2d 566; Washington: State ex rel. O'Connell v. Yelle, 51 Wash.2d 594, 320 P.2d 1079; West Virginia: Harbert v. County Court of Harrison County, 129 W.Va. 54, 39 S.E.2d 177; and Wyoming: Blackburn v.

Board of County Commissioners, 67 Wyo. 494, 226 P.2d 784. In light of the consistency of the cases in their application of the constitutional restrictions similar to that of Article V, § 31, it is difficult to contend that the Supreme Court of Montana has misapplied the rule as respondents contend.

Next, but in the same vein, the respondents urge that, after all, Art. V, § 31 applies only to ''officers'' rather than ''office''. Thus they reason that since one of the reasons for the prohibition in Art. V, § 31 is that it removes the sphere of temptation from every public officer whose official conduct might be influenced by the hope of reward or the fear of punishment; then if it applies to the office rather than the officer the reason for the prohibition disappears and thus the rule should not apply. The foregoing statement of the argument asserts a distinction without a difference.

However, the respondents' counsel points out that three Constitutional Articles are involved:

Art. V, § 31, provides:

''Sec. 31. Except as otherwise provided in this constitution, no law shall extend the term of any public officer, or *increase or diminish* his salary or emolument after his election or appointment: provided, that this shall not be construed to forbid the legislative assembly from fixing the salaries or emoluments of those officers first elected or appointed under this constitution, where such salaries or emoluments are not fixed by this constitution.'' (Emphasis supplied.)

Art. VII, § 4, provides:

''Sec. 4. Until otherwise provided by law, the governor, secretary of state, state auditor, treasurer, attorney general and superintendent of public instruction, shall quarterly, as due, during their continuance in office, receive for their services compensation, which is fixed as follows: (Then follows the schedule of salaries).

''* * * The compensation enumerated shall be in full for all services by said officers respectively rendered in any official

capacity or employment whatever during their respective terms of office, and the salary of no official shall be *increased* during his term of office." (Emphasis supplied.)

Art. VIII, § 29, provided before amendment in 1964 as previously discussed:

"Sec. 29. The justices of the supreme court and the judges of the district courts shall each be paid quarterly by the state, a salary, which shall not be *increased or diminished* during the terms for which they shall have been respectively elected." (Emphasis supplied.) (Before amended.)

Counsel then discusses the effect of the amendment to Art. VIII, § 29, relating to judges' salaries. The amendment struck two words, "increased or". Counsels' brief then goes on in this fashion:

"The question then arises, 'Does this constitutional amendment permit the judges' salary to be increased during their term of office?

"We respectfully submit that the amendment has not accomplished a thing and if the three constitutional provisions here under consideration prevented an increase during the term of office to the justices and judges of the state, then they are still prevented from receiving such increases during their term of office. Why? Simply, for the reason, as was stated in the *Porter* [Jackson] case, if Section 29, Article 8, is to be construed literally, then it is within the power of the legislature to increase the salary of the justices or the judges or any of them and thereby create the very situation which the provisions of the constitutional limitations were conceived to prevent. Certainly, the judges and justices of this Court would no longer be removed from the sphere of temptation to control or influence their official conduct by the hope of reward. Surely, such an interpretation would permit the lawmaking power to have the power to interfere *ad libitum* with the compensation of public officers, and while it is true that such an interpretation might not permit a decrease, certainly the danger of coercive action favorable to its own views by the promise of an increased salary is most cer-

tainly enhanced. The judges and justices of this Court are public officers. As such, there cannot be, under the rule in the *Porter* [Jackson] case, one rule for judges, another rule for the governor of this state, and yet another for county officers. All are public officers created by the constitution. Furthermore, Section 31, Article 5, refers to *'any public officer'* and we need not remind this court again that the three provisions of our constitution, although clothed in different language, mean the same thing, have the same history and are intended to accomplish the same end and that there is 'no magic in mere words'."

But the argument put forth paves the way for respondents' final argument. That is that Art. V, § 31, is itself unconstitutional as being violative of the equal protection clause of the Fourteenth Amendment of the United States Constitution. Since, as pointed out, certain state officers are paid different salaries for performance of the same offices, such as County Commissioners with six year staggered terms, or judges may receive increases during their terms whereas other state officers may not, that the equal protection clause is violated. There is no doubt that the federal Constitution is superior in the sense that it prevails over the state Constitution. In State ex rel. Schultz-Lindsay Construction Co. v. State Bd. of Equal., 145 Mont. 380, 403 P.2d 635, this Court stated:

"It is conceded that the Act is presumed to be valid and *its constitutionality will not be condemned unless its invalidity is shown beyond a reasonable doubt, and the burden of proving its invalidity rests upon the one attacking the statute.* If it is found, however, that the statute violates the Constitution the courts will pronounce it void. [Citing authority.]" (Emphasis supplied.)

At this point the respondents review a great number of cases applying the equal protection clause to the various states. Of the more recent cases the respondents found appearing a dominant theme referred to as "fundamental fairness" to all persons; and, further, that this "fundamental fairness" precludes different salaries for different people holding the same job.

Respondents do not say so, but apparently would go so far as to question pay based on seniority, length of service or any other type of differentiation or scale.

In examining Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600; Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647; City of Phoenix, Ariz. v. Kolodyiejski, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523, we find a two-fold test. First, is there a compelling state interest involved in forbidding changes in salary of public officials during their terms of office? In State ex rel. Jackson v. Porter this Court said:

"The government of the United States, and the government of every one of our states, has for its foundation principle the axiom of democracy that the powers of government in a republic can be exercised with security to the people only when apportioned among the three coordinate branches, which shall be, as nearly as may be, independent of each other."

A compelling state interest does appear in the necessity and desirability of the separation of powers. Second, does the classification between incumbents and nonincumbents provide a rational basis for furthering this state interest? Yes, the inability of the legislative branch to alter the salaries of other branches of government prevents the legislature from controlling the will of those other branches by threat of decreased salaries or promise of increased salaries. The temptation to control is eliminated.

One thing that is clear in considering salaries of elected and appointed officials, when a person files for the office or accepts an appointment he knows what the emoluments are and what they will be during the term. With full knowledge and understanding, he cannot in good faith claim fundamental unfairness.

This problem was decided in a federal decision, Kavanagh v. Brown, D.C., 206 F.Supp. 479, affirmed per curiam 371 U.S. 35, 83 S.Ct. 143, 9 L.Ed.2d 112, in the year 1962. There the federal court denied that a constitutional restriction similar to

Art. V, § 31, violated the equal protection clause of the Four-
teenth Amendment. The court in Kavanagh used the test of
"compelling state interest" and "classification having a rational
basis for achieving the compelling state interest."

 In Kavanagh the federal court, quoting with approval a
Michigan case said:

"It seems clear from the above that the alleged discrimination
must be tested by its relationship to the achievement of the
objectives of Article 16, § 3, of the State Constitution. The
Michigan Supreme Court has spoken clearly and unequivocally
in the case of Vigelius v. Houghton County Clerk, 317 Mich.
138, 26 N.W.2d 737, decided in 1947. The following quotation
from Barrus v. Engel, 186 Mich. 540, 544, 545, 152 N.W. 950,
appears in Vigelius, 317 Mich. at pages 143-144, 26 N.W.2d
at page 739, and we quote it as set forth there:

" ' "No direct authority upon the exact question presented
here is to be found in our decisions. The wisdom of a provi-
sion prohibiting any change either by increase or reduction of
a public officer's salary during his term has been universally
recognized. Such provisions are common in Constitutions and
statutes of the various states, and the courts have been firm in
restraining attempts to evade them. This court has been in line
with the general rule when deciding cases where phases of the
question have arisen. Citing cases. * * *

" ' "We find here not only the constitutional prohibition,
but that in the amendment itself which created this office
those empowered to determine the matter of compensation exer-
cised that authority, and declared in express language that no
salary or other compensation should attach to the office, and
also that the 'Home Rule Law' which authorized the amendment
again declares that a city has no power to change the salary or
emoluments of a public official after his appointment or election.

" ' "Restrictive provisions of this class are universally recog-
nized as in the interest of good government and founded on
sound reasons of public policy. They are adopted for the two-
fold purpose of protecting the public by restraining those in

office from taking advantage of their positions and official influence to unduly secure added compensation not contemplated and to which they were not entitled when they were selected for and accepted office, and also to secure each individual officer in enjoyment of the emoluments provided and rightfully to be expected when he accepted his office, by protecting him from any unfriendly power which might, for any reason, otherwise reduce or abolish them.'' '

"An expression from the highest court of a sister state to the same effect is to be found in the case of State ex rel. Mack, Judge v. Guckenberger, Aud., 139 Ohio St. 273, 278, 39 N.E.2d 840, 139 A.L.R. 728 (1942) where the Court spoke as follows:

" 'The purpose of the constitutional inhibition now under consideration is to make sure that the judge and the electorate are advised before he is appointed or elected what his compensation will be, with the assurance that it cannot be changed by the Legislature during the term; that the judge is precluded from using his personal influence or official action to have the Legislature increase his salary; and that at the same time he is protected against the Legislature and the people from decreasing his compensation after his term begins. These same salutary purposes are fully and effectually preserved by the terms of the present statute, albeit the compensation of the judge is made variable, from and after the last federal census becoming effective during his term.'

"Need we expound further? Our view as to the wisdom of the provision is of no account. Our view as to its fairness as applied in the instant case is of no account. Our function is to apply the law as laid down by the United States Supreme Court. We are convinced that according to its precepts we may not here declare Article 16, § 3 to be violative of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. 'It is a salutary principle of judicial decision, long emphasized and followed by this Court, that the burden of establishing the unconstitutionality of a statute rests on him who assails it, and that courts may not declare a legislative

discrimination invalid unless, viewed in the light of facts made known or generally assumed, it is of such a character as to preclude the assumption that the classification rests upon some rational basis within the knowledge and experience of the legislators. A statutory discrimination will not be set aside as the denial of equal protection of the laws if any state of facts reasonably may be conceived to justify it.' Metropolitan [Casualty Ins.] Co. [of New York] v. Brownell, 294 U.S. 580, 584, 55 S.Ct. 538, 540, [79 L.Ed. 1070] (1935). We are not convinced that an apparently reasonable basis for the alleged discrimination does not exist, or that the statutory (constitutional) discrimination is invidious. We are unable to say that this provision does not provide equal protection of the laws.''

We find no violation of the Fourteenth Amendment.

Finally, respondents, all constitutional officers or appointees have taken an oath to support, protect and defend the Constitution of the State of Montana. In this case, as to issue No. 3, they challenge the state Constitution as being unconstitutional. We question their right to do so, but have chosen to rule on the issue anyway, as hereinbefore discussed.

For the reasons expressed herein, the judgment of the district court is reversed.

The HONORABLE W. W. LESSLEY, District Judge (dissenting) : sitting in place of MR. JUSTICE DALY.

I dissent.

The train of reasoning employed by the majority in this case speeds past the rule of the Porter decision and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution; but when it reaches the constitutional provision Article V, Sec. 31, it comes to a full stop on the siding.

There is only one question to answer. It is: may the plaintiffs-respondents as elected public officers of the State of Montana receive the salary (which is an increase) provided by the formula as set out in the statute here involved?

The majority knows that our constitution, or any of its pro-

visions, enunciates only neutral principles. These principles take color and life and meaning only when applied to the facts of a particular case.

The majority in turgid prose states, "The prohibition in Art. V, § 31, is absolute. * * *" "* * * the admonition cannot be more clear." But Judge Holloway in State ex rel. Jackson v. Porter, 57 Mont. 343, 188 P. 375 did not pursue the literalness of the provision in question when he said:

"If the lawmaking power had the power to interfere ad libitum with the compensation of public officers, it could coerce action favorable to its own views by the promise of increased salary or the threat of violent reduction. * * * The purpose is to secure, as far as possible, the independence of each co-ordinate branch of government, and to that end relieve the lawmaking branch from the importunities of officeholders who might seek increased compensation, not for *the office, but for themselves,* and what was of infinitely greater consequence, remove from the lawmakers the temptation to control the other branches of government by promises of reward in the form of increased compensation or threats of punishment of way of reduced salaries * * *;" and so that statement must be the binding ratio decidendi of the constitutional provision now in question; it is the rule that should be applied to Sec. 25-605 R.C.M.1947, as amended.

I respectfully suggest to the majority the phrase, "common sense." I know it is much abused in everyday usage, but it is still the Rocky Mountain Range of reason and interpretation above the ever-rising flood of legal formulae, clauses, and phrases pouring from our reservoirs of formal law. Proper interpretation and common sense, as I view it, says that Sec. 25-605 R.C.M.1947, as amended applies the proposed salaries to all county offices. It carries the form of the formula-plan, based in reference to population and assessed valuation of the county offices. It carries the form of the formula-plan, based on reference to population and assessed valuation of the county wherein the officers are located. It is impossible to show interfer-

ence ad libitum with the compensation of the officers involved. In fact, it is difficult to find a more impersonal hands-off approach to the question. It deals with compensation through the formula of population and valuation, and does not deal with persons who might be subject to fear or favor. How can the rule of the constitutional limitation as spelled out in the Porter case be said to apply here?

How about the importunities of office holders who might seek increased compensation not for the office but for themselves? Clearly the act implies to the office, not the officer; and it is not idle semantics to so distinguish. Here there is no wage increase for an individual or individuals as such.

What about control of other branches by the legislative branch? The entire spectrum from county treasurer to clerk of court is here; executive and judicial areas are involved along with quasi-legislative; surely, there is no control of a coordinate branch. The hope of reward or the fear of punishment is not present. Here there is no individual that may be placed in fear or in hope; indeed, there is not even a select group that may be so influenced, because of the wages so legislated.

The most dramatic and pragmatic instance of the common sense of this interpretation is found in the case of the judicial salaries. No matter, that judicial increases during term are possible only because of a constitutional amendment; the common sense of it is, those salaries *have been increased during term,* and the feared consequences lie only in the fencing with shadows and juggling of language, not in the actual results.

I think this question can be resolved without ever reaching the constitutional one of Equal Protection under the Fourteenth Amendment. But since my brethren of the majority speak of constitutionality, let us consider that question.

The compelling interest mentioned by the court simply doesn't exist under the facts of the case. Where does the principle of separation of powers suffer from increase of salary during term? Where is the danger of legislative control over executive or judicial?

To speak of eliminating the temptation to control as does the court, I say to them without intending disrespect, who is tempted?

To speak of fundamental fairness, in the face of the variegated salaries for some office, the majority says, "* * * one thing that is clear in considering salaries of elected and appointed officials, when a person files for the office or accepts an appointment he knows what the emoluments are and what they will be during the term." But that is not true if you are filling out an unexpired term, as in the Porter case; not true if you are a mayor, as in the Kendig case; and not true if you're the victim of a reclassification of your county, as in the Zimmerman case; and surely not applicable at all to judicial salaries.

I too have read the decisions of our sister states on this subject. In many, the constitutional provisions are the same or similar; and in some they are different. There are interesting interpretations in all the cases; the main thrust of these cases is as the majority says. But in many decisions on one distinction or another an interpretation resulted in an increase in salary during the term, see Pennsylvania in Appeals of Loushay et al., 169 Pa.Super. 543, 83 A.2d 408, and Missouri State ex rel. McGrath v. Walker, 97 Mo. 162, 10 S.W. 473; State ex rel. Harvey v. Sheehan, 269 Mo. 421, 190 S.W. 864; Denneny v. Silvey, 302 Mo. 665, 259 S.W. 422; Little River Drainage Dist. v. Lassater, 325 Mo. 493, 29 S.W.2d 716.

So I end as I began, with the constitutional provision Article V, Sec. 31, and its rule and purpose. I say that the reason for the rule does not exist under the facts of this case. That is not to say the constitutional limitation embodied in Article V, Sec. 31, is not real and viable and constitutional; in the words of Justice Holloway, "So far as there is reason for the rule which underlies the limitations it must be enforced with the utmost rigor * * *."

But I say the reason for the rule ceases and fails, and so does the rule itself.

I had hoped the majority would reach a different result. I had hoped that they would decide this important cause not with an obvious literal interpretation but with reason from the rule and purpose of the constitutional provision itself, and thus measure the consequences of their decision, and hold the will of the legislator as so expressed here, constitutional. If this was not possible, that they then might sweep Adami aside, and hold Article V, Sec. 31, violative of the Equal Protection clause. That would have affirmed the court's belief in equality.

The majority's latitude and longitude of literalness thwarts both the reason and rule of the Porter case, and the pragmatic rule of equality of the Equal Protection clause.

Needless to say, I regretfully but vigorously dissent.